Michael ENRIGHT, Appellant,

v.

GOODMAN DISTRIBUTION, INC., Appellee.

No. 14–09–00759–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 16, 2010.

Gabe T. Vick, Michael E. Pierce, Robert Pitard Wynne, Matthew Paul Skrabanek, Houston, for appellant.

S. Shawn Stephens, Gregory C. Ulmer, Rebecca Jackson Doty, Houston, for appellee.

Panel consists of Justices SEYMORE, BROWN, and BOYCE.

## OPINION

WILLIAM J. BOYCE, Justice.

This negligence suit arises from an accident in which Michael Enright, an employ-

ee of Randall's Refrigeration, was struck by an air-conditioning condenser unit while it was being loaded onto a trailer at a facility controlled by Goodman Distribution, Inc. The district court signed a judgment in conformity with the jury's verdict, and Enright appeals. We affirm.[1]

## BACKGROUND

Enright worked as a driver transporting equipment for Randall's Refrigeration. On September 1, 2005, Enright was assisting as Goodman Distribution forklift operator David Gonzalez transferred equipment onto a "low-boy" trailer from a loading dock. The trailer was lower than the loading dock. Enright was standing on the trailer as the forklift lowered a large air-conditioning condenser unit to the trailer from the loading dock. During the transfer process, Gonzalez tilted the loaded forks downward; the condenser unit slipped from the forks onto the trailer and hit Enright's lower back and right leg. Enright subsequently sued Goodman Distribution in connection with this September 2005 accident, contending that Goodman Distribution acted negligently and injured him.

In a 10–2 verdict, the jury found that Enright and Goodman Distribution both were negligent; it attributed 50 percent of the injury-causing negligence to Enright and 50 percent to Goodman Distribution. When asked what sum of money would fairly and reasonably compensate Enright for his injuries that resulted from the 2005 accident, the jury awarded $15,199 in expenses for past medical care. The jury awarded zero damages for (1) future medical care, and (2) past and future physical pain, value of lost earning capacity, disfigurement, physical impairment, and loss of household services. The trial court signed a final judgment in conformity with the jury verdict.

Enright filed a motion for new trial in which he contended the evidence was factually insufficient to support (1) the jury finding that attributed 50 percent of the injury-causing negligence to Enright; (2) the jury's zero damage finding for all claims other than expenses for past medical care; and (3) the jury's finding of $15,199 in damages for past medical expenses. The trial court granted his motion. Goodman Distribution then filed a motion to reconsider the order granting a new trial, which the trial court granted. The trial court signed an order vacating its prior order granting a new trial and denied Enright's motion for new trial. Enright timely appealed.[2]

1. Enright sued Goodman Appliance Holding Co., Goodman Global, Inc., and Goodman Distribution, Inc. Enright filed a notice of partial non-suit to dismiss without prejudice all claims against Goodman Appliance Holding Co. and Goodman Global, Inc. The jury charge submitted questions only as to Goodman Distribution, Inc., and the final judgment awarded damages only as to Goodman Distribution, Inc. Accordingly, we refer to the defendant and appellee as "Goodman Distribution."

2. The trial court signed a final judgment on April 17, 2009. Enright filed a timely motion for new trial on May 18, 2009, and the trial court signed an order granting the motion for new trial on June 15, 2009, the 59th day after the judgment was signed. See Tex.R. Civ. P. 329b(c), (e). On August 11, 2009, the trial court signed an order granting Goodman Distribution's motion to reconsider and setting aside the June 15 order granting a new trial. See In re Baylor Med. Ctr. at Garland, 280 S.W.3d 227, 230–231 (Tex.2008) ("When a new trial is granted, the case stands on the trial court's docket the same as though no trial had been had. Accordingly, the trial court should then have the power to set aside a new trial order any time before a final judgment is entered." (quotations omitted)). The August 11 order granting reconsideration operated to reinstate the original judgment and constituted an order modifying, correct-

## ANALYSIS

On appeal, Enright argues that the evidence is factually insufficient to support the jury's finding that attributes 50 percent of the injury-causing negligence to Enright; he claims that he could not be responsible for the accident because he was not facing the forklift when the unit slipped from the forks and hit him. Enright also challenges the jury's zero damage findings for past physical pain, past and future disfigurement, and past and future physical impairment; he claims that the zero damage findings contradict the jury's finding of injury and award of $15,199 for past medical expenses. Enright argues that the $15,199 damage award is against the great weight and preponderance of the evidence, and that he is entitled to $106,927.52 for past medical expenses. Enright requests that we reverse and remand for new trial.[3]

█ We generally review a trial court's failure to grant a motion for new trial for an abuse of discretion. *Novosad v. Cunningham*, 38 S.W.3d 767, 770 (Tex.App.-Houston [14th Dist.] 2001, no pet.). However, when the motion for new trial is based on a challenge to the sufficiency of the evidence supporting the verdict, we apply the appropriate sufficiency standard to evaluate the trial court's denial of the motion. *Mandell v. Hamman Oil & Ref. Co.*, 822 S.W.2d 153, 158 (Tex.App.-Houston [1st Dist.] 1991, writ denied), *abrogated on other grounds by Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1 (Tex.2008).

█ In reviewing Enright's factual sufficiency challenges, we consider and weigh all of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001). In reviewing challenges on issues for which Enright bore the burden of proof, we will set aside the verdict only if it is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.; see also Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 773 (Tex.2003). On an issue for which Goodman Distribution had the burden of proof, we will set aside the verdict only if the evidence is so weak as to render the adverse finding clearly wrong and unjust. *Dow Chem. Co.*, 46 S.W.3d at 242.

### I. Enright's Negligence

Enright claims the evidence is factually insufficient to support the jury finding that attributes 50 percent of the injury-causing negligence to him. At trial, Goodman Distribution bore the burden of proof to establish the fact of Enright's negligence and the percentage of comparative responsibility attributable to Enright. *See, e.g., McDonald v. Dankworth*, 212 S.W.3d 336, 340 (Tex.App.-Austin 2006, no pet.).

█ Enright testified that his employer trained him on methods for loading a "lowboy" trailer that is not level with a loading dock. Enright testified that not all drivers assist in the loading process, and that drivers sometimes ask laborers to do the loading. Goodman Distribution's branch manager, Michael Buttafuoco, and its forklift

ing, or reforming the original judgment; therefore, the appellate timetable began anew on August 11, 2009. *See Old Republic Ins. Co. v. Scott*, 846 S.W.2d 832, 833 (Tex.1993); *see also In re Baylor Med. Ctr. at Garland*, 280 S.W.3d at 231 ("[I]f a new trial is granted and later withdrawn, the appellate deadlines run from the later order granting reinstatement rather than the earlier order."). Enright

timely filed a notice of appeal on August 27, 2009. *See* Tex.R.App. P. 26.1.

3. Enright's issue presented in his brief also refers to legal sufficiency, but the substance of his briefing addresses only factual sufficiency and he seeks only a remand for a new trial. Therefore, we do not address legal sufficiency in this opinion.

operator, Gonzalez, both testified that Enright pulled up to the loading dock and voluntarily chose to participate in the loading process.

Gonzalez testified that the procedure of slightly tilting the forks to allow the load to be pulled onto the trailer was common and had not previously caused the equipment to slide unexpectedly. On the day of the accident, this procedure had been used three times to place equipment on Enright's trailer without incident. Gonzalez thought it was safe to lower the fourth unit and slightly tilt the loaded forks downward even though Enright was turned sideways and was not directly facing the forklift. Gonzalez testified that the condenser unit slipped off the forks, touched down on the trailer, and hit Enright's hip. Enright's liability expert Raymond Skinner testified that anyone with forklift training would recognize the potential risk of employing a loading method in which the loaded forks of a forklift are tilted downward.

On appeal, Enright argues that he could not have been negligent because his back was to the forklift when Gonzalez tilted the forks and the condenser unit slipped. Enright testified that he and Gonzalez loaded three air-conditioning units onto the trailer without incident using eye contact and hand signals. Enright and Gonzalez both testified that when Gonzalez lowered the fourth unit to the trailer, Gonzalez tilted the forks without waiting for Enright to directly face the forklift and give a signal.

After considering all the evidence, we conclude that the jury's attribution of 50 percent of the injury-causing negligence to Enright is supported by factually sufficient evidence. The jury heard evidence that Enright voluntarily and repeatedly stood in the trailer and assisted Gonzalez despite the danger posed by tilting the forklift load downward toward the "low-boy" trailer. On this record, the evidence is not so weak as to render the jury's apportionment unfair or unjust. *See Dow Chem. Co.,* 46 S.W.3d at 242.

We overrule Enright's issue challenging the factual sufficiency of the evidence supporting the jury finding attributing 50 percent of the injury-causing negligence to Enright.

## II. Zero Damage Finding for Past Physical Pain

Enright argues that the jury's zero damage finding for past physical pain is against the great weight and preponderance of the evidence because there is uncontroverted evidence of an objective injury.

■■■ The presence or absence of pain is an inherently subjective question for which the plaintiff bears the burden of production and persuasion. *Dollison v. Hayes,* 79 S.W.3d 246, 249–51 (Tex.App.-Texarkana 2002, no pet.). Some objective injuries are so significant that an award of damages for physical pain is mandated. *See, e.g., Hammett v. Zimmerman,* 804 S.W.2d 663, 668–69 (Tex.App.-Fort Worth 1991, no writ) (reversing zero damage finding for pain and suffering associated with listing of the lumbar spine and declination of the sacral base plane; upholding zero damage finding for pain and suffering associated with restricted range of motion, tightness, and tenderness); *Russell v. Hankerson,* 771 S.W.2d 650, 652–53 (Tex. App.-Corpus Christi 1989, writ denied) (reversing zero damage finding for pain and suffering associated with severely swollen and discolored foot); *Porter v. Gen. Tel. Co. of the Sw.,* 736 S.W.2d 204, 205 (Tex. App.-Corpus Christi 1987, no writ) (reversing zero damage finding for pain and suffering because jury awarded medical expenses and mental anguish associated with laceration from car accident); *see also*

*Golden Eagle Archery, Inc.,* 116 S.W.3d at 774–75 (noting in dicta that zero pain and suffering damage findings should not be upheld on appeal if "there is objective, undisputed evidence of a significant injury and the jury could not have compensated the injured party in some other category of damages"). Examples of serious, objective injuries that will support an award of damages for subjective complaints of pain include bone fractures, severe burns, and lacerations. *See Hammett,* 804 S.W.2d at 666.

◼ However, a damage award for physical pain is not always mandated when medical expenses are awarded. With respect to an undisputed injury that is less serious and accompanied only by subjective complaints of pain, a jury reasonably may believe that the injured party should be compensated "for seeking enough medical care to ensure that [the] injury was not serious" yet nonetheless conclude "that [the injured party] never suffered pain warranting a money award." *Blizzard v. Nationwide Mut. Fire Ins. Co.,* 756 S.W.2d 801, 805 (Tex.App.-Dallas 1988, no writ); *see also McGuffin v. Terrell,* 732 S.W.2d 425, 428 (Tex.App.-Fort Worth 1987, no writ) ("[E]vidently the jury found appellant's injury so minimal as to not warrant an award for past pain and suffering" despite the jury's award of medical expenses for treatment of the muscle spasms.); *Chadbourne v. Cook,* No. 05–99–00353–CV, 2000 WL 156955, at *2 (Tex. App.-Dallas Feb. 15, 2000, no pet.) (not designated for publication) ("[T]he jury could reasonably conclude any pain and suffering Jack endured was too negligible to warrant monetary compensation" despite the jury's award of medical expenses for treatment of his nose injury.).

Additionally, when the jury hears conflicting evidence regarding the injury's cause or an alternative explanation for the injured party's reported pain, courts have upheld zero damage findings for physical pain despite the jury's finding that the injured party is entitled to damages for medical expenses. *See, e.g., Gainsco County Mut. Ins. Co. v. Martinez,* 27 S.W.3d 97, 103–04 (Tex.App.-San Antonio 2000, pet. dism'd) (upholding zero damage finding for pain and suffering despite award for medical expenses; jury heard evidence that plaintiff was a malingerer with pre-existing back injuries); *Lamb v. Franklin,* 976 S.W.2d 339, 342–43 (Tex. App.-Amarillo 1998, no pet.) (upholding zero damage finding for pain and suffering despite award for medical expenses; jury heard evidence of alternative causes for soft tissue injury and evidence that plaintiff was "either faking or exaggerating her complaints for financial or other gain"); *Hyler v. Boytor,* 823 S.W.2d 425, 427 (Tex. App.-Houston [1st Dist.] 1992, no writ) (upholding zero damage finding for pain and suffering despite award for medical expenses; jury heard evidence of alternative causes for plaintiff's lumbar sprain and spinal injury); *see also Jimenez v. Rodriguez,* No. 01–98–00293–CV, 1999 WL 213096, at *7 (Tex.App.-Houston [1st Dist.] Apr. 15, 1999, pet. denied) (not designated for publication) (upholding zero damage finding for pain and suffering despite award for medical expenses; jury heard evidence that plaintiff's complaints were motivated by secondary gain).

◼ It follows that the fact of injury does not conclusively establish compensable physical pain in all circumstances. *Dollison,* 79 S.W.3d at 253; *Blizzard,* 756 S.W.2d at 805. Based on this record and the governing legal framework, we must examine whether the jury's finding of zero damages for past physical pain is against the great weight and preponderance of the evidence. *See Dow Chem. Co.,* 46 S.W.3d at 242.

## A. Evidence of Pain from Long–Term Injury and Surgery

We first address whether the jury's finding of zero damages for past physical pain contravenes the overwhelming weight of the evidence in light of Enright's contention that the 2005 accident caused painful long-term back problems and necessitated surgery in 2008.

Enright informed his employer of the 2005 accident the day it occurred and was taken to Methodist Willowbrook Hospital to be examined. Enright's medical records from that examination note complaints of pain in his lower right back. Willowbrook performed several tests and diagnosed Enright as having a "back contusion." Willowbrook administered morphine to Enright and prescribed Vicodin. Enright visited KSF Orthopaedic Center the following day, where he complained of lower back pain and pain radiating down his right leg. KSF noted a limited range of lumbar motion with an area of mild soft tissue swelling and "one very small 0.5 cm area of blue discoloration." KSF prescribed Naproxen.

Following these two examinations, Enright visited a number of doctors throughout the next three years including: (1) a pain specialist, Dr. Bass; (2) a neurosurgeon, Dr. Torres; (3) an orthopedic surgeon, Dr. Cupic; and (4) another orthopedic surgeon, Dr. Pribil. Drs. Torres, Cupic, and Pribil each recommended surgery to resolve Enright's reported back problems. Enright testified that he first visited Dr. Cupic on the recommendation of his attorneys, and Dr. Cupic referred Enright to Dr. Pribil. Dr. Pribil performed surgery on Enright's back in May 2008.

Enright testified:

It—the pain is still constantly [sic], but I have good days and I had bad days.

\* \* \*

[B]efore September the 1st of 2005 the pain would come and go, be off and on. And then as of 2005 the pain did not go away. It was constant and, as a matter of fact, it got more intense in my legs and my back. It was pretty bad.

\* \* \*

I would have good days and bad days at times; but when the pain was at its worse [sic], yes, I needed that surgery. And I am glad because my legs are a lot better.

\* \* \*

I was in a lot of pain. When you are in a lot of pain, you want to get relief. I felt like [the surgery] was the best way for me to get relief because the medication wasn't helping all that much. The pain was too big.

Enright claims that the 2005 accident necessitated this follow-up treatment and surgery, and that he suffered compensable physical pain as a result.

Gonzalez testified that Enright "looked back and he pushed ... the unit away" after it came into contact with him on the day of the accident. Gonzalez testified that Enright did not inform Gonzalez that he was in pain, and that Enright did not cry out in pain, grab his back, or fall over. Gonzalez testified that Enright initially declined to report the accident and went on with the loading process; after loading the rest of the units, Enright changed his mind and decided to report the accident. After making the report, Enright declined Goodman Distribution's offer to transport him to the hospital, and he took his truck to make several bank deposits and transport the equipment in the truck to his employer. When Enright did seek medical attention, neither Willowbrook nor

KSF identified any fractures or other injury to Enright's back other than a bruise.

The record shows that Enright was involved in at least fourteen documented accidents before 2005, all of which resulted in medical attention at various hospitals for low back and related leg pain; four of these incidents occurred during the three months preceding the 2005 accident. Enright's medical records also show that Enright suffered from a degenerative, arthritic back condition that existed as early as 1992, and he had a long history of disk bulges and herniations. Goodman Distribution's medical expert, orthopedic surgeon Dr. Greider, reviewed all of Enright's medical records from 1992 to 2008 and opined that any bulges and herniations requiring surgery could have been caused by these long-term conditions. Dr. Greider also testified that the specific surgery performed by Dr. Pribil could not have explained Enright's report that his right-leg pain, which Enright attributes to the 2005 accident, disappeared after the surgery. The jury heard deposition testimony from Dr. Bass that echoed both of these opinions. Dr. Greider also testified:

Q: Other than the bruise that you just told us about, was there any other objective evidence of any trauma to [Enright's] back [after September 1, 2005]?

A: None that I'm aware of.

&ast; &ast; &ast;

Q: And what is the significance of that consistency of no evidence of trauma over that two-year period [following September 1, 2005]?

A: Well, I think that it reinforces the concept that there was—other than this bruise, there was no identifiable objective injury of this gentleman.

&ast; &ast; &ast;

Q: Was there any medical justification for the operation that Dr. Pribil performed [on Enright's back in 2008]?

A: None.

&ast; &ast; &ast;

Q: If we can go back to September 1, 2005, after he goes to Methodist Willowbrook Hospital, he was diagnosed with a bruise with no evidence of any other trauma, as a board certified orthopedic surgeon what medical treatment do you think would have been reasonable and necessary to treat that condition?

A: Well, I am not aware of any medical—once he left the emergency room, I am not aware of any medical treatment other than what is termed the "tenure of time" that is going to resolve that problem.

&ast; &ast; &ast;

A: My opinion is twofold. [Enright's] diagnosis is a contusion in the back. And No. 2, there was no medical objective injury that any of the degenerative conditions in his spine have been changed or worsened.

It was uniquely within the province of the jury to assess the conflicting testimony regarding whether the 2005 accident caused Enright's long-term back problems or necessitated surgery in 2008. *See Golden Eagle Archery*, 116 S.W.3d at 761 ("[T]he jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony."). Based on the evidence outlined above, the jury was entitled to conclude that the 2005 accident did not cause Enright's back problems, aggravate them, or necessitate surgery. Accordingly, the fact that Enright underwent back surgery does not make the jury finding of zero damages for past physical pain in connection with the 2005 accident contrary to the overwhelming weight of the

evidence. *See Dow Chem. Co.,* 46 S.W.3d at 242.

## B. Evidence of Subjective Pain from Bruise

 Even if we assume for the sake of argument that Enright's bruise from the 2005 accident constituted an objective injury, "the mere fact of injury [alone] does not prove compensable pain and suffering." *Blizzard,* 756 S.W.2d at 805; *see also Chadbourne,* 2000 WL 156955, at *2. Notwithstanding that the jury awarded $15,199 for past medical expenses, the record before this court amply supports the jury's zero damage finding for past physical pain.

Enright testified that when the condenser unit struck him he told Gonzalez, "[It] kind of hurts here. . . . This is hurting pretty bad." Enright's report to Goodman Distribution on the day of the accident states that he was experiencing back pain. Enright's medical records note his report of pain on the day of the accident and the following day; Enright was prescribed pain medication for the bruise diagnosed at Willowbrook and KSF.

Dr. Greider testified that Enright is a malingerer with a "compensation neurosis." Dr. Greider testified that a "malingerer" is as "a person [who] intentionally provides a story of an illness [ ] without any objective information to confirm it." He also testified that an individual suffers from "compensation neurosis" when that individual has "complaints or symptoms without an obvious anatomic explanation, no objective injury to back it up, and [an interest in] secondary gain that [has] the tendency to prolong these symptoms."

Dr. Greider testified that he formed his conclusion about Enright's malingering and compensation neurosis by thoroughly reviewing all of Enright's medical records, which reveal that Enright (1) gave conflicting explanations to treating physicians for his injuries over the years; (2) purposely withheld information from treating physicians about prior accidents or injuries; (3) complained of persistent back pain in some instances yet completely failed to mention back pain when he subsequently sought treatment for other issues; (4) complained of injuries allegedly sustained at work that had no anatomic basis; and (5) waited at least two years after the 2005 accident before deciding to undergo surgery. Dr. Cupic disagreed with Dr. Greider's conclusion that Enright is a malingerer who has compensation neurosis; Dr. Greider acknowledged that no other physician affirmatively characterized Enright in this manner. Dr. Greider attributed this difference of opinion to the fact that (1) none of Enright's treating physicians had the benefit of reviewing all of Enright's medical records; and (2) Enright did not always disclose his full patient history to his physicians.

The jury also heard evidence that Enright's admitted narcotics addiction led him to engage in drug-seeking behavior by visiting different hospitals and complaining of pain. Dr. Greider testified that Enright's pattern of visiting new and different emergency rooms suggests that Enright was trying to prevent detection of his addiction.

Enright testified that he stopped seeing his primary care and pain specialist physician, Dr. Bass, because Enright did not want to participate in the biofeedback program that Dr. Bass recommended as an alternative to surgery. The jury heard deposition testimony from Dr. Bass, who stated that he became concerned about Enright's "over-reliance" on medication. Dr. Bass testified that after he stopped treating him, Enright's narcotic withdrawal symptoms prompted Enright's wife to call Dr. Bass and request assistance. Dr.

Bass reminded Mrs. Enright that he "would not be prescribing any medications for [Enright] because of noncompliance," and Dr. Bass suggested that Enright visit an emergency room if his pain intensified. At that point, Dr. Bass testified that Mrs. Enright hung up on him. Enright testified that this was not the only time he had experienced symptoms from narcotic withdrawal.

■ Evidence that subjective pain complaints are motivated by interests other than obtaining treatment for legitimate injuries will support a jury's decision to award zero damages for physical pain. *See, e.g., Gainsco County Mut. Ins. Co.,* 27 S.W.3d at 103; *Lamb,* 976 S.W.2d at 342; *Hyler,* 823 S.W.2d at 427; *see also Jimenez,* 1999 WL 213096, at *7. The jury could have concluded on this record that any pain Enright reported in connection with the bruise he sustained from the 2005 accident was not compensable either because it was too slight, or because the report was motivated by drug-seeking behavior and secondary gain. Accordingly, the jury's finding of zero damages for past physical pain was not against the great weight and preponderance of the evidence. *See Dow Chem. Co.,* 46 S.W.3d at 242.

We overrule Enright's issue regarding the jury's zero damage finding for past physical pain.

### III. Damages for Disfigurement and Physical Impairment

Enright complains that the jury's finding of zero damages for past and future disfigurement and physical impairment is against the overwhelming weight of evidence.

■ Disfigurement has been defined as that which impairs the appearance of a person, or that which renders one's appearance unsightly, misshapen, imperfect, or deformed in some manner. *Figueroa v. Davis,* 318 S.W.3d 53, 64 (Tex.App.-Houston [1st Dist.] 2010, no pet.). Enright does not identify and we cannot locate any place in the record where he presented evidence to the jury showing that he was disfigured by the 2005 accident, either as a result of the 0.5 cm bruise on his lower back or from any other injury. *See* Tex.R.App. P. 38.1(1). Therefore, we conclude that the jury's zero damage finding for disfigurement was not against the great weight and preponderance of the evidence. *See Dow Chem. Co.,* 46 S.W.3d at 242.

■ Physical impairment damages compensate for the loss of the injured party's former lifestyle. *Patlyek v. Brittain,* 149 S.W.3d 781, 785 (Tex.App.-Austin 2004, pet. denied). It can encompass both economic and non-economic losses, and can include hedonic damages, or "loss of enjoyment of life." *Id.* (citing *Golden Eagle Archery,* 116 S.W.3d at 764–65, 772). To recover damages for physical impairment, Enright must have proven by a preponderance of the evidence that (1) he incurred injuries that are distinct from, or extend beyond, injuries compensable through other damage elements; and (2) these distinct injuries have had a "substantial" effect. *Id.* at 786.

■ Enright's testimony constitutes the only evidence in this record that he suffered physical impairment as a result of the 2005 accident:

Q: Now, Mr. Enright, are there some things that you enjoyed doing before September the 1st, 2005, that you can't do now as a result of your injuries?

A: Yes. I liked to, if I could, to hunt. I like shooting basketball with my kids when I could. I like throwing the softball around with them when I could. I like working—fixing on the car, running the vacuum for my wife. You know, just

general things in nature. Going on road trips in the truck. We used to love to travel out in East Texas, up in the Hill Country.

When Enright was cross-examined, he testified that his pre–2005 health problems also limited his ability to engage in some of these activities. According to medical records from his visit to KSF in 2005, Enright failed to identify these physical activities when asked to describe any type of exercise in which he participated. As discussed above, the jury heard extensive evidence attributing Enright's back problems to other pre-existing conditions, and attributing his complaints of pain to secondary gain, drug-seeking behavior, or exaggeration. Dr. Greider testified that Enright suffered no physical impairment as a result of the 2005 accident.

The jury was entitled to resolve the conflict in testimony regarding the effect of the 2005 accident on Enright's lifestyle. *See Golden Eagle Archery,* 116 S.W.3d at 761. Based on the controverted testimony regarding physical impairment, we cannot conclude that the jury's finding of zero damages for physical impairment is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Dow Chem. Co.,* 46 S.W.3d at 242.

We overrule Enright's issues regarding the jury's finding of zero damages for past and future disfigurement and physical impairment.

## IV. $15,199 for Past Medical Expenses

Enright argues that the jury's award of $15,199 in past medical expenses is arbitrary because it is not based on any evidence. Enright seeks compensation for past medical expenses totaling $106,927.52, which includes the cost of his 2008 back surgery.

We will not disregard a jury's damage award merely because the jury's reasoning in reaching its figures is unclear. *First State Bank v. Keilman,* 851 S.W.2d 914, 930 (Tex.App.-Austin 1993, writ denied). A jury has discretion to award damages within the range permitted by the evidence, as long as a rational basis exists for the jury's damage calculation. *Id.* A jury may not arbitrarily assess an amount not authorized or supported by evidence at trial; in other words, a jury may not "pull figures out of a hat." *Id.*

Enright testified that on the day of the accident he visited Willowbrook, where he received diagnostic treatment and pain medication for his bruise. Enright also testified that pursuant to Willowbrook's recommendation, he sought follow-up treatment the next day at KSF. The jury heard evidence that some of Enright's treating physicians after these two visits recommended further medical treatment and surgery.

However, as discussed above, Dr. Greider testified that the only injury caused by the 2005 accident was the bruise diagnosed by doctors at Willowbrook and KSF. Dr. Greider further testified that the rest of Enright's complaints were unrelated to the accident, and that the additional medical treatments and surgery were medically unnecessary.

The evidence presented at trial shows that the charges for the visit to Willowbrook totaled $8,095; the charges for the visit to KSF totaled $7,199. The cost of both visits totaled $15,294. Consistent with this evidence, the jury awarded $15,199 for past medical expenses. This evidence provides a rational basis by which the jury could compensate Enright for the costs incurred during his initial visits to diagnose the bruise he sustained as a result of the 2005 accident. *See id.*

We overrule Enright's issue regarding the jury's $15,199 damage award for past medical expenses.

## CONCLUSION

Having overruled all Enright's issues, we affirm the judgment of the trial court.