Opinion issued July 30, 2024



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-22-00799-CV

_____

**EDWARD CANTERBURY, Appellant**

**V.**

**LUBY'S, INC., Appellee**

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-57050**

---

## MEMORANDUM OPINION

Appellant Edward Canterbury sued appellee Luby's, Inc. for premises liability, alleging that he was injured as a result of a slip and fall in one of its restaurants. The case was tried to a jury, which apportioned 51% of the liability to Luby's and awarded Canterbury damages for (1) future physical pain and mental

anguish, (2) past loss of earning capacity, (3) future physical impairment, and (4) past medical care expenses. The trial court rendered judgment on the verdict, ordering that Canterbury recover from Luby's $111,864.65, which included 51% of the total damages awarded by the jury and pre-judgment interest. Canterbury moved for a new trial on the ground that the jury's failure to award any damages for past physical pain and mental anguish or past physical impairment was against the great weight and preponderance of the evidence. The motion for new trial was denied by operation of law. Canterbury now argues on appeal that the trial court erred in failing to grant his motion for new trial challenging the jury's finding of zero damages for (1) past physical pain and mental anguish and (2) past physical impairment.

We conclude that the jury's verdict was not against the great weight and preponderance of the evidence, and, thus, the trial court did not err in denying the motion for new trial by operation of law. Accordingly, we affirm.

**Background**

Around 7:30 p.m. on June 5, 2017, Canterbury entered the Luby's Cafeteria located on 2400 South MacGregor Way, Houston, Texas. The Luby's parking lot was wet from prior rain, so Luby's had an orange cone placed at a double glass doorway at the entrance to alert patrons to wipe their feet as they came in. Canterbury walked inside and stepped on the entry mat in close physical proximity

2

to the cone. He continued to walk without stopping to dry his feet before stepping onto a hard-surfaced floor. As Canterbury stepped onto the hard-surface floor he slipped and fell on his right side.

At trial, Canterbury and Luby's both presented evidence regarding events occurring before the fall. Eight months before he fell at Luby's, Canterbury had undergone surgery on October 14, 2016, to repair a torn rotator cuff in his right shoulder. He testified that he suffered the tear to his right rotator cuff while building an arbor over his plants. According to his medical records, in February 2017—after his initial surgery but before his fall at Luby's—Canterbury rated the pain in his right shoulder a 9 out of 10. On May 25, 2017, eleven days before the fall, Canterbury filled out a form during a "follow-up shoulder exam" and noted that his symptoms had "increased" since his last visit. He rated his overall level of pain a 7 out of 10 and reported pain in both his left and right shoulders.

Canterbury testified that by the time of the fall, his right shoulder had recovered, and he was able to perform physically demanding activities such as clearing brush, operating a log splitting machine, building a chicken pen, carpentry, and carrying large bags of dog food. He reported that he was also able to work as a certified respiratory therapist employed by Memorial Hermann Medical Center. Canterbury earned about $7,000 per month in this role.

The jury viewed the video from Luby's showing Canterbury's entrance and fall. The video showed Canterbury crossing the mat at the entrance, passing the orange cone that Luby's had placed at the entrance, and stepping on the tile floor. Canterbury then slipped and fell backward, taking the brunt of the fall on his right side with his left arm at his side, then rolling side to side. He moved both his arms, seeming to have a full range of motion. He got off the floor himself and declined emergency medical treatment immediately after the fall.

The day after the fall, Canterbury met with Dr. David Crumbie, the orthopedic surgeon who had performed the previous surgery on his right shoulder. Canterbury complained at that time of pain in his left shoulder, so Dr. Crumbie performed an MRI of Canterbury's left shoulder. Dr. Crumbie testified that the MRI revealed a dislocation of the shoulder with an anterior-inferior glenoid labral tear in the left shoulder. After the fall Dr. Crumbie performed surgery on Canterbury's left shoulder on July 14, 2017. Five months after the fall, on November 6, 2017, Canterbury reported continued right shoulder pain to Dr. Crumbie. At a physical therapy appointment in November 2017, Canterbury reported that "he is doing really well and has no pain in his [left] shoulder despite chopping wood and loading heavy stumps and dog food bags." He reported that "his [right] shoulder and back [were] his limiting factors" at the time. Dr. Crumbie performed surgery on Canterbury's right shoulder on December 1, 2017. Dr.

4

Crumbie testified based on reasonable medical probability that Canterbury suffered injuries to both shoulders that required surgery and other treatment. He testified that the injuries to both shoulders were caused by, or exacerbated by, his fall at Luby's. Dr. Crumbie further testified that, prior to the fall at Luby's, he had only treated Canterbury's right shoulder.

Luby's medical expert, Dr. Edelstein, also an orthopedic surgeon, testified based on his review of Canterbury's medical records, imaging done by Dr. Crumbie, and the video of Canterbury's fall. Citing notes made during Canterbury's May 2017 visit to Dr. Crumbie and other medical records, Dr. Edelstein testified that Canterbury's shoulder problems predated his fall at Luby's. He testified that Dr. Crumbie noted findings during the May 2017 exam consistent with a rotator cuff tears in both of Canterbury's shoulders and treated him with injection in both shoulders. Dr. Edelstein also examined the MRI of Canterbury's left shoulder that Dr. Crumbie ordered on June 6, 2017, the day after Canterbury fell. Dr. Edelstein disputed that the injury was caused by the fall at Luby's, noting that Canterbury's "tendon had been torn for a while," not due to a traumatic injury. He testified that it did not appear that Canterbury had actually dislocated his left shoulder. Edelstein "didn't see a lot of edema" or "bone bruising in the humeral head" that he would expect to see if a dislocation had occurred. He testified that "[t]here was a full-thickness tear, but this looked like a typical tear that one would

5

have at 62 years of age, with having prior symptoms and having been treated with positive findings [for rotator cuff damage], even just ten days before." He further opined that based on the way that Canterbury fell, neither of the rotator cuff tears were actually caused by the fall and that they were likely just chronic tears.

The parties presented additional evidence. Canterbury presented testimony from several friends and colleagues regarding their observations of Canterbury's pain levels and activity levels both before and after the accident. Those witnesses identified an increase in his pain and a decrease in his activity after the fall.

During closing argument, Canterbury's attorney argued for over $900,000 in damages. He argued to the jury that years in the past are not as valuable as years in the future stating:

> Now that's 22 years in the past. I'm 64 years old. And I'm thinking, all those past years, they're not as valuable as what few years I have left. That's why they call those the golden years, the golden years. So, these years are more valuable than the past years . . . .

During its closing argument, Luby's argued that Canterbury's own conduct was the primary cause of his fall. It argued that Canterbury's fall was not the cause of his subsequent shoulder problems and surgeries, citing the video of the fall and Dr. Edelstein's testimony. Its attorney recommended that the jury award $50,000 for past physical impairment and $50,000 for past physical pain and mental anguish "[i]f you feel that damages are necessary in the past." It further suggested

6

that future damages were also improper or should be limited because "he's earning more than he did. He's working full-time. He's never been back to a doctor."

The jury returned a verdict finding that Luby's caused or contributed to 51% of the occurrence and that Canterbury caused or contributed to 49% of the occurrence. The charge presented the jury a single damages question:

> What sum of money, if paid now in cash, would fairly and reasonably compensate [Canterbury] for his injuries, if any, that resulted from the occurrence in question?
>
> Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.
>
> Do not include any amount for any condition existing before the occurrence in question, except to the extent, if any, that such other condition was aggravated by any injuries that resulted from the occurrence in question.

The charge then provided blanks for six specific measures of damages. The jury awarded damages as follows: (1) zero damages for physical pain and mental anguish sustained in the past; (2) $60,000 in damages for future physical pain and mental anguish; (3) $50,000 for loss of earning capacity; (4) zero damages for physical impairment suffered in the past; (5) $60,000 for physical impairment in the future; and (6) $30,000 for medical expenses. The jury charge did not contain any instructions or definitions regarding these individual measures of damages or the distinction between "past" and "future" damages.

7

Based on the jury's verdict, the trial court rendered judgment for Canterbury. The judgment awarded him $102,000 (51 percent of the damages awarded by the jury) in addition to $9,864.65 (pre-judgment interest of 5 percent per annum on $40,800, which is 51% of the damages in the past).

On August 30, 2022, Canterbury moved for a new trial, requesting that the jury verdict of zero damages for past physical pain and mental anguish and for past physical impairment be found "against the overwhelming weight of the evidence" and "fatally irreconcilable." This motion for new trial was overruled by operation of law, and Canterbury filed this appeal.

## Sufficiency of Damages Findings

Canterbury argues that the trial court abused its discretion in denying his motion for new trial on the ground that the jury's award of zero damages for past physical pain and mental anguish and for past physical impairment was against the great weight and preponderance of the evidence.

### A. Standard of Review & Relevant Law

We review a trial court's denial of a motion for new trial for an abuse of discretion. *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006); *In re G.P.*, No. 01-16-00346-CV, 2016 WL 6216192, at *22 n.64 (Tex. App.—Houston [1st Dist.] Oct. 25, 2016, no pet.) (mem. op.) (holding that abuse-of-discretion standard applies regardless of whether motion for new trial was expressly denied or denied by

operation of law); *Limestone Constr., Inc. v. Summit Com. Indus. Props., Inc.*, 143 S.W.3d 538, 542 (Tex. App.—Austin 2004, no pet.) (holding same) (citing *Bank One, Tex., N.A. v. Moody*, 830 S.W.2d 81, 85 (Tex. 1992)). A trial court abuses its discretion when it acts in an "arbitrary or unreasonable" manner or when it acts "without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). When the motion for new trial is based on a challenge to the sufficiency of the evidence, we apply the appropriate sufficiency standard to evaluate the trial court's denial of the motion. *Enright v. Goodman Distrib., Inc.*, 330 S.W.3d 392, 396 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

Here, Canterbury argues that he is entitled to a new trial by challenging the factual sufficiency of the evidence supporting the jury's finding of zero damages for past physical pain and mental anguish and for past physical impairment. When a party attacks the factual sufficiency of an adverse finding on an issue on which the party had the burden of proof, the party must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). A reviewing court must consider and weigh all of the evidence and can set aside a verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* Generally, the jury has great

discretion in considering evidence on the issue of damages. *In re State Farm Mut. Auto. Ins. Co.*, 483 S.W.3d 249, 263 (Tex. App.—Fort Worth 2016, no pet.). The jury is the sole judge of the weight and credibility of testimony. *Id.* And the reviewing court may not substitute its own judgments for those of the factfinder. *Id.* The reviewing court must defer to the fact-finder's determinations so long as those determinations are reasonable. *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004).

"The mental processes by which a jury determines the amount of damages is ordinarily incognizable by an appellate court." *Gutierrez v. Martinez*, No. 01-07-00363-CV, 2008 WL 5392023, at *6 (Tex. App.—Houston [1st Dist.] Dec. 19, 2008, no pet.) (mem. op.) (quoting *Walker v. Ricks*, 101 S.W.3d at 750 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.); *see Thomas v. Oldham*, 895 S.W.2d 352, 359–60 (Tex. 1995). "It is peculiarly within the jury's discretion to determine the dollar amount of a plaintiff's pain and suffering, and the jury has great discretion in fixing this amount." *Gutierrez*, 2008 WL 5392023, at *6; *see State Farm*, 483 S.W.3d at 263 (holding that matters of pain and mental anguish are necessarily speculative, and it is particularly within jury's province to resolve these matters and decide amounts attributable thereto). "In order to be entitled to damages for mental anguish, a plaintiff must show more than mere worry or anxiety; there must be proof of 'intense pain of body or mind . . . or a high degree

of mental suffering.'" *Gutierrez*, 2008 WL 5392023, at \*7 (quoting *Hicks v. Ricardo*, 834 S.W.2d 587, 590 (Tex. App.—Houston [1st Dist.] 1992, no writ) (citations omitted)).

"When uncontroverted, objective evidence of an injury is presented and the causation of the injury has been established, courts are more likely to overturn jury findings of no damages for past physical pain and impairment." *Lanier v. E. Founds., Inc.*, 401 S.W.3d 445, 455 (Tex. App.—Dallas 2013, no pet.). However, "where the evidence of pain is conflicting, scant, or more subjective than objective, appellate courts are generally more reluctant to determine a jury finding of no damages is contrary to the great weight and preponderance of the evidence." *Grant v. Cruz*, 406 S.W.3d 358, 363 (Tex. App.—Dallas 2013, no pet.). Furthermore, the fact of injury does not necessarily prove compensable pain and suffering, because a jury may also conclude, even when an objective injury is shown, that the injury is attributable to factors other than a defendant's negligence. *Gutierrez*, 2008 WL 5392023, at \*6–7; *State Farm*, 483 S.W.3d at 263–64; *see Enright*, 330 S.W.3d at 398 ("It follows that the fact of injury does not conclusively establish compensable physical pain in all circumstances.").

Nor does an award of medical expenses mandate an award for physical pain or mental anguish. *See Enright*, 330 S.W.3d at 398. In some cases, a jury may reasonably believe that the injured party should be compensated "for seeking

11

enough medical care to ensure that [the] injury was not serious" yet nonetheless conclude "that [the injured party] never suffered pain warranting a money award." *Id.* (quoting *Blizzard v. Nationwide Mut. Fire Ins. Co.*, 756 S.W.2d 801, 805 (Tex. App.—Dallas 1988, no writ)). Similarly, courts have held that "courts should not conclude that a jury's failure to award any damages for physical impairment is against the great weight and preponderance of the evidence simply because there is objective evidence of an injury." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 774 (Tex. 2003). Courts consider circumstances such as the instructions given to the jury, other categories under which a jury might compensate the plaintiff for impairment, and the existence of conflicting evidence about the existence or severity of a physical injury and associated pain. *Id.* at 774–75 (citing *Landacre v. Armstrong Bldg. Maint. Co.*, 725 S.W.2d 323, 325 (Tex. App.—Corpus Christi–Edinburg 1986, writ ref'd n.r.e.) (holding that failure to award damages for physical impairment was not against great weight and preponderance of evidence because jury had awarded amounts in other categories of non-economic damages and observing that "[t]he determination that the appellant has not and will not suffer physical impairment apart from that already compensated for is uniquely within the jury's province"), and *Pilkington v. Kornell*, 822 S.W.2d 223, 230 (Tex. App.—Dallas 1991, writ denied) (concluding that when jury is presented with conflicting evidence about existence and severity

12

of physical injury and associated pain, it "could believe all or any part of the testimony of any witness and disregard all or any part of the testimony of any witness")).

When damage categories are challenged for the factual sufficiency of the jury's failure to award larger damages, a court of appeals should conduct a review of each of these categories considering evidence unique to each category. *Golden Eagle Archery*, 116 S.W.3d at 773. If, after considering evidence unique to a category, the court concludes that the jury's failure to award larger damages for that category is against the great weight and preponderance of the evidence, it should then consider all the overlapping evidence, together with the evidence unique to each other category to determine if the total amount awarded in the overlapping categories is factually sufficient. *Id.*

**B.    Analysis**

Canterbury argues that the jury findings of zero damages for past physical and mental anguish and zero damages for physical impairment are against the great weight and preponderance of the evidence and manifestly unjust. Canterbury claims that the jury was faced with uncontroverted, objective evidence that he suffered injuries due to Luby's negligence, that he suffered past pain and mental anguish from them, and that he suffered past physical impairment from them. However, Canterbury's claim that the evidence was uncontroverted and objective

13

misrepresents the record. We begin our review of these complaints by considering the evidence unique to each category. *See id.*

### 1. *Evidence unique to past physical pain and mental anguish category*

The parties presented conflicting evidence regarding what portion, if any, of Canterbury's past physical pain and mental anguish was caused by his fall at Luby's. Dr. Crumbie testified and provided medical records describing the nature of Canterbury's injuries. He testified that, as Canterbury's treating physician, he treated Canterbury both before and after the fall at Luby's. He performed two surgeries on Canterbury after the fall, and he testified that the fall caused or exacerbated the injuries to Canterbury's shoulders. Canterbury also points to his own testimony and testimony of friends and colleagues regarding his fall and his injuries, including his testimony that he had recovered from his pre-fall shoulder surgery and that the fall caused the pain in both his left and right shoulders. But this evidence was not uncontroverted.

Luby's presented the testimony of Dr. Edelstein, who testified that the injuries to Canterbury's shoulders were not caused by the fall but were the result of chronic conditions. Dr. Edelstein testified that it appeared the tear in Canterbury's left shoulder had been there "for a while." Canterbury's medical records reflected that he had surgery on his right shoulder before the fall. Less than two weeks before he fell, Canterbury complained of pain in both shoulders, rating his overall

pain at seven out of ten. The video of Canterbury's fall showed him landing on his right side with both arms down at his sides. Dr. Edelstein testified that the fall as shown on the video would not have caused the injuries as diagnosed and treated by Dr. Crumbie.

Given this conflicting testimony about the cause of Canterbury's injuries, we cannot conclude that the jury's failure to award damages for this category is against the great weight and preponderance of the evidence. *See id.*; *State Farm*, 483 S.W.3d at 263 (holding that matters of pain and mental anguish are necessarily speculative, and it is particularly within jury's province to determine amounts attributable thereto).

Canterbury complains that Dr. Edelstein's testimony did not controvert his own objective evidence of his injuries, and, thus, an award of zero damages for past physical pain and mental anguish was improper. He argues that Dr. Edelstein was not his treating physician and did not physically examine Canterbury; rather, Dr. Edelstein reviewed medical records and MRIs ordered by Dr. Crumbie. These issues go to the weight and credibility of Dr. Edelstein's testimony and resolving any conflicts within the testimony was solely within the jury's discretion. *See, e.g.*, *Mittelsted v. Meriwether*, 661 S.W.3d 867, 892–93 (Tex. App.—Houston [14th Dist.] 2023, pet. denied) (holding, where medical expert provided opinion based on review of medical records and statements from injured parties' family and friends,

15

that testimony was nevertheless reliable and observing, "The fact that Dr. Adhia did not review every possible record goes to the weight of his testimony, not its admissibility, and did not render it speculative.") (citing *Regent Care Ctr. of San Antonio, L.P. v. Detrick*, 567 S.W.3d 752, 764 (Tex. App.—San Antonio 2018) (expert opinion concerning ambulance charges was based on review of records and related billing entries; the fact that expert did not additionally review actual invoices went to weight of testimony and did not render testimony conclusory or speculative), *aff'd*, 610 S.W.3d 830 (Tex. 2020)); *Onwuteaka v. Gill*, 908 S.W.2d 276, 283 (Tex. App.—Houston [1st Dist.] 1995, no writ) ("The weakness of facts in support of an expert's opinion generally go to the weight of the testimony rather than its admissibility.").

We further observe that the fact that Canterbury proved the existence of shoulder injuries does not necessitate an award for physical pain or mental anguish. *See Gutierrez*, 2008 WL 5392023, at *6–7. Here, there was evidence in Canterbury's medical records, the video of the fall itself, and Dr. Edelstein's testimony that would have permitted the jury to attribute any physical pain or mental anguish to factors other than Luby's negligence. *See id.*; *see also State Farm*, 483 S.W.3d at 263 (holding that matters of pain and mental anguish are necessarily speculative and particularly within jury's province to determine amounts attributable); *Enright*, 330 S.W.3d at 398 ("It follows that the fact of

16

injury does not conclusively establish compensable physical pain in all circumstances.").

### 2. *Evidence unique to past physical impairment category*

Regarding evidence unique to the category of Canterbury's past physical impairment, the evidence again conflicted regarding how much impairment, if any, was due to Luby's negligence. Canterbury presented his medical records from Dr. Crumbie's treatment of him after the fall. Those records document impairments such as weakness and limitations to his range of motion. Dr. Crumbie testified that Canterbury required physical therapy after his two post-fall surgeries. Dr. Crumbie also determined that Canterbury was not able to work for several months following the June 5 fall and, upon his return to work, was restricted from lifting. Canterbury also points to testimony of friends and coworkers that he could not lift things, either at work or at home, like bags of dog food or luggage. Canterbury himself testified that, after the fall, he was unable to raise his arms, could not use tools he used to use, and could not engage in the same tasks as he did before the fall. For example, he testified that he could not walk his dogs because they would pull at his shoulders.

Canterbury argues that Dr. Edelstein failed to controvert the evidence of his past physical impairment. However, Luby's points to the medical records of Canterbury's condition before the fall and to Dr. Edelstein's testimony, described

above. The jury could have credited this evidence in concluding that Canterbury's injuries, and thus any impairment, were caused by chronic conditions and not by his fall at Luby's. While Canterbury presented evidence that he fell and subsequently had surgery on both of his shoulders following the fall, it was the jury's role as the factfinder to determine if the fall caused the complained-of impairment. *See Golden Eagle Archery*, 116 S.W.3d at 774 ("In keeping with the principles that a court may not substitute its judgment for that of the jury and that the jury is the sole judge of the weight and credibility of testimony, courts should not conclude that a jury's failure to award any damages for physical impairment is against the great weight and preponderance of the evidence simply because there is objective evidence of an injury."); *Pilkington*, 822 S.W.2d at 230 (concluding that, when jury is presented with conflicting evidence about existence and severity of physical injury and associated pain, it "could believe all or any part of the testimony of any witness and disregard all or any part of the testimony of any witness").

Considering all of the evidence on this category, including the conflicting medical evidence and testimony from Dr. Crumbie and Dr. Edelstein, the jury's finding of zero damages for past physical impairment attributable to Luby's negligence is not against the great weight of the evidence. *See Golden Eagle Archery*, 116 S.W.3d at 773.

18

Canterbury argues that "[i]t was fatally inconsistent and reversible error" to award zero damages for past physical pain and mental anguish and for past physical impairment while simultaneously awarding damages for future physical pain and mental anguish and for future physical impairment.[1] We observe, however, that the jury charge did not define the distinction between past and future damages, nor did it define the particular categories of physical pain and mental anguish or physical impairment.

The charge instead instructed the jury to determine the amount of money that would compensate Canterbury "for his injuries, if any, that resulted from the occurrence in question," stating specifically that the jury should "not include any amount for any condition existing before the occurrence in question, except to the extent, if any, that such other condition was aggravated by any injuries that

---

[1]  We construe this as an additional argument challenging the factual sufficiency of the jury's damages findings. Canterbury did not raise the issue of a fatal inconsistency in the jury verdict in the trial court before the jury was discharged. "To preserve error that the jury's findings are inconsistent, the complaining party must raise an objection in the trial court before the jury is discharged." *Izen v. Comm'n for Lawyer Discipline*, 322 S.W.3d 308, 324 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). We further conclude that Canterbury has not met the burden to establish that he was entitled to have an allegedly conflicting finding set aside. *See Gainsco Cnty. Mut. Ins. Co. v. Martinez*, 27 S.W.3d 97, 101–12 (Tex. App.—San Antonio 2000, pet. dism'd) (affirming judgment rendered on jury verdict awarding future physical impairment and medical care damages but zero past physical impairment or physical pain, and holding that "[a] court may not strike jury answers on the ground of conflict if there is any reasonable basis upon which they can be reconciled"; observing that party seeking to set aside finding "bears the burden of showing that one of the conflicting jury answers necessarily requires a judgment different from the judgment the trial court rendered").

resulted from the occurrence in question." The charge further instructed the jury that it should "not award any sum of money on any element if [it had] otherwise, under some other element, awarded a sum of money for the same loss." Furthermore, in his closing argument, Canterbury's attorney argued to the jury that Canterbury's remaining "golden years" were worth more than his past years. The attorney requested that the jury award higher amounts for future damages. This argument provides further context for the jury's allocation of damages here.

The jury charge in this case "permitted the jury to make its own determination of how to categorize and compensate the losses suffered" by Canterbury. *See Golden Eagle Archery*, 116 S.W.3d at 770–71 (observing that charge did not define "physical impairment" or other damages categories but instead instructed jury not to award damages on any element if it had awarded for those injuries under some other element, in order to prevent compensating same injury twice; further observing that charge permitted jury to make its own determinations of how to categorize and compensate losses suffered by plaintiff).

As discussed above, the jury's findings on the categories of past physical pain and mental anguish and past physical impairment were not against the great weight and preponderance of the evidence. Neither party challenges the sufficiency of the evidence on the remaining categories. *See id.* at 773. Because we have concluded that the jury's findings were not against the great weight and

20

preponderance based on evidence unique to each category, our analysis "should end there." *See id.* (holding that reviewing court should consider overlapping evidence only if, after considering evidence unique to particular category, it determines that failure to award larger damages for the category is against the great weight and preponderance of the evidence).

We conclude that the jury's damages findings here were not against the great weight and preponderance of the evidence. *See Dow Chem. Co.*, 46 S.W.3d at 242. Accordingly, the trial court did not abuse its discretion in denying Canterbury's motion for new trial by operation of law. *See Enright*, 330 S.W.3d at 396. We thus overrule Canterbury's issues on appeal.

## Conclusion

We affirm the judgment of the trial court.


Richard Hightower
Justice

Panel consists of Justices Goodman, Landau, and Hightower.