# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00134-CV

**Alexander Kosaka, Appellant**

**v.**

**Hook and Anchor Marine and Watersports, LLC, Appellee**

## FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT
### NO. B-09-0641-C, HONORABLE JAY K. WEATHERBY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Alexander Kosaka brought suit against appellee Hook and Anchor Marine and Watersports, LLC ("Hook & Anchor"), alleging that one of its employee's negligence caused an automobile accident in which Kosaka was injured. After allowing a settlement credit that exceeded the total amount of damages awarded by the jury, the trial court rendered a take-nothing judgment against Kosaka. On appeal, Kosaka challenges an evidentiary ruling by the trial court and the jury's zero-damages findings for past medical expenses, past physical impairment, and past and future disfigurement. For the reasons that follow, we affirm the judgment.

## BACKGROUND

Kosaka and Jayme Lynn Jones, an employee of Hook & Anchor, were involved in an automobile accident on October 21, 2008. Jones was running a work-related errand for Hook & Anchor and failed to yield the right of way to the vehicle operated by Kosaka. Kosaka sustained

injuries as a result of the accident. His injuries included broken ribs, torn ligaments in one of his knees, a torn disc and a "pars defect at L5-S1."[1] His medical treatment after the accident included surgery to repair his anterior cruciate ligament (ACL).

Kosaka brought suit for the personal injuries that he sustained from the accident against Jones, Hook & Anchor, and another company that owned the vehicle that Jones was driving at the time of the accident. After Kosaka settled his claims against the other company and Jones for $320,000, his remaining claims against Hook & Anchor proceeded to a jury trial in October 2010. Hook & Anchor's defenses included contributory negligence, but the primary dispute between the parties was the appropriate award of damages for the injuries sustained by Kosaka as a result of the accident. Kosaka sought damages for past and future medical expenses, pain and mental anguish, loss of earning capacity, disfigurement, and physical impairment. The witnesses included Kosaka, his sister-in-law and brother, his treating neurosurgeon and orthopedic surgeon, and vocational and economics experts.

At trial, Kosaka stipulated that $44,733.69 was the amount that his health care providers would accept as full payment for the services rendered to him up to the time of trial. This amount included the medical expenses to surgically repair his ACL. He also presented evidence to support his request for an award of $150,000 for future medical expenses. Evidence showed that Kosaka probably needed to have two additional surgeries: a posterior cruciate ligament (PCL) repair and an "anterior and posterior lumbar fusion." As to his loss of earning capacity, Kosaka presented

---

[1] One of the doctors testified that "a pars defect is a kind of a traumatic event in which the joints at the affected level fracture."

evidence that: (i) he lost his hourly job in which he earned $9.15 an hour because he "had been out too long" after the accident, (ii) he was unemployed for several months after he lost his job, and (iii) after he was able to obtain employment, it was part-time, minimum-wage positions. He remained employed on a part-time basis at the time of trial. Kosaka also presented evidence about how the accident has affected him, including his pain and physical limitations because of his injuries. He testified that it was "[h]ard to bend" and that "I'm still a little moveable, but not as quick as I used to be." His sister-in-law and brother also testified that he was physically "limited" after the accident.

At the close of the evidence, the trial court submitted the case to the jury. The jury found that the negligence of both Jones and Kosaka proximately caused the accident and that Kosaka's percentage of responsibility was 10% and Jones's was 90%. The jury found amounts which "would fairly and reasonably compensate Alexander Kosaka for his injuries, if any, that resulted from the occurrence in question" as follows:

| | |
|---|---|
| Physical pain and mental anguish (past) | $ 5,000 |
| Physical pain and mental anguish (future) | $10,000 |
| Loss of earning capacity (past) | $20,534 |
| Loss of earning capacity (future) | $84,613 |
| Physical Impairment (future) | $10,000 |
| Medical care expenses (future) | $80,000 |

The jury also made zero-damages findings for disfigurement in the past and future, physical impairment in the past, and medical care expenses incurred in the past.

Because the settlement credit of $320,000 exceeded $189,132.30—the total amount awarded by the jury reduced by 10%—the trial court rendered a take-nothing judgment

3

against Kosaka. Kosaka filed a motion for new trial which was denied after a hearing. This appeal followed.

## ANALYSIS

On appeal, Kosaka requests that this Court reverse the trial court and remand for a new trial and raises three issues to support his requested relief. He contends that: (i) the trial court's admission of evidence of "settlement monies" received by Kosaka before trial resulted in an improper verdict; (ii) the jury improperly awarded zero for his past medical expenses; and (iii) the jury improperly awarded zero for physical impairment sustained in the past and disfigurement in the past and future.

### *Evidence of "settlement monies"*

In his first issue, Kosaka challenges the trial court's admission of evidence of "settlement monies." We review a trial court's decision to admit evidence under the abuse-of-discretion standard. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). A trial court abuses its discretion when it acts unreasonably or "without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

Kosaka contends that a line of questioning by defense counsel to Kosaka allowed the jury to infer that he had received significant amounts of money in settlement before the trial. Kosaka urges that the trial court erred by allowing the questioning based on rule 408 of the rules of evidence and the collateral source rule. *See* Tex. R. Evid. 408; *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 934–95 (Tex. 1980) (discussing collateral source rule). Rule 408 generally

4

prohibits introducing evidence of compromise and settlement. Tex. R. Evid. 408. The collateral source rule generally prohibits a defendant from introducing evidence of payments from other sources for the plaintiff's injuries. *Taylor v. American Fabritech, Inc.*, 132 S.W.3d 613, 626 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

The complained-of questioning occurred during cross examination of Kosaka. Defense counsel questioned Kosaka about his testimony on direct as to his ability to pay for future medical care for his injuries and Kosaka's counsel objected as follows:

[Defense Counsel]:   Mr. Kosaka, you told the jury about your inability to pay bills at your brother's house and also you have told them that you were unable to get the surgeries performed that you're saying that you're needing. Do you remember that testimony?

[Kosaka]:   What I meant by those things, these were, I think, after the accident, you know. There were—what I meant were after the accident. I had no job, you know, nothing. I couldn't do—I couldn't get nothing done.

. . .

[Defense Counsel]:   Have you scheduled those surgeries, back surgery if that's what you think you need, and your PCL, your other knee surgery?

[Kosaka]:   No. These—those—those things were mentioned to me. I told the doctors that—at that time that I couldn't afford those things because that's right after the accident.

[Defense Counsel]:   Okay. What my question is, have you scheduled surgeries on your knee and your back so that you can get feeling better and get back working full-time and better job?

[Kosaka]:   Yeah. Well, I could have scheduled them at that time because I didn't have the money to pay for them and those things. (sic)

5

[Defense Counsel]:     That's not my question.  Have you rescheduled the surgery now?

[Kosaka]:     No.  Now, no.

[Defense Counsel]:     You have the money to pay for those surgeries now, do you not?

[Plaintiff Counsel]:     Judge, I'll object for the record on grounds of relevance and collateral source.

The Court:     To the question as asked, I will deny the objection.

. . .

[Defense Counsel]:     My question is, do you have the money now to pay the surgeries that you say you need and told the jury that you need to have?

[Kosaka]:     Do I have the money now?

[Defense Counsel]:     Yes, sir.

[Kosaka]:     Not quite what—the money of everything to get it all done.

[Defense Counsel]:     Well, how much money do you believe it's going to take for you to schedule those surgeries?

[Kosaka]:     I know for my knee surgery, we don't know yet what the rounding of that one yet, what it's going to cost.

[Defense Counsel]:     Well, it's been two years since the accident.  What's the problem with knowing those numbers that you're going to—

[Kosaka]:     I'm having trouble seeing these doctors to know these—these—these numbers, because those time when I didn't have the money.  I can't go and keep seeing them.  I can't afford to be seeing doctors all the time. MRIs where—I'm supposed to have done, I couldn't have it done because I didn't have the money to have it done, at those time.

[Defense Counsel]:     But you do have the money now to do those things?

6

[Kosaka]:                    I have the money now, but not—not what I need to do.

Defense counsel continued this line of questioning with questions about the specific medical procedures that Kosaka anticipated having done, their estimated costs, and whether Kosaka had enough money to pay for the procedures. Kosaka's counsel objected on other grounds to a few questions, but he did not raise the collateral source rule or a rule 408 objection.[2]

As to the objected-to question stated above, Kosaka's counsel did not raise rule 408 as a ground for his objection and, therefore, has failed to preserve error based upon this rule. *See* Tex. R. App. P. 33.1; *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007) ("To preserve error for appellate review, the complaining party must timely and specifically object to the evidence and obtain a ruling."). Kosaka's counsel raised "collateral source" as a basis for the objection, but the question did not ask Kosaka to reveal the source of any funds that he had available to pay for medical procedures going forward. The question asked whether he had funds available or not. We cannot conclude then that the trial court abused its discretion by overruling the objection and allowing Kosaka to answer this question.

As to Kosaka's global challenge to this line of questioning, he did not preserve his appellate arguments as to rule 408 or the collateral source rule. Tex. R. App. P. 33.1; *McShane*, 239 S.W.3d at 235. But, even if he had, we would conclude that the trial court did not abuse its

---

[2] He objected to one question as "asked and answered." He also objected to other questions on the ground that "there hasn't been any evidence or testimony about the actual cost of the PCL or back surgery."

7

discretion by allowing the questioning. Kosaka was not asked, and no evidence was admitted that showed that he settled with other defendants before trial or the amount of the settlement.

Kosaka also raised the issue of his ability to pay on direct examination. He testified that he did not complete medical treatments for his injuries because he "just couldn't afford it" and that "ever since I got let go . . . , my insurance and everything stopped." The defense's questions challenging Kosaka's stated reason on direct for the delay in treatment—inability to pay—then were relevant for impeachment purposes. *See* Tex. R. Evid. 408 (exclusion of evidence not required "when the evidence is offered for another purpose"); *Macias v. Ramos*, 917 S.W.2d 371, 374 (Tex. App.—San Antonio 1996, no writ) (discussing exception to collateral source rule when a plaintiff raises inability to pay bills). Further, why Kosaka delayed medical treatments, including the two additional surgeries that he contended that he needed until the time of trial—two years after the accident—was contested and relevant as to the appropriate amount of several categories of damages.[3] We overrule Kosaka's first issue.

---

[3] For example, whether he would have the surgeries after the trial was relevant to his request for medical expenses in the future and whether the surgeries were necessary and the scope of his recovery assuming that he had the surgeries were relevant to his request for loss of earning capacity in the future. Kosaka was 36 years old at the time of the trial, and he sought loss of earning capacity for approximately 30 years based upon his injuries. But Kosaka also testified that, once he had his surgeries, "It will get me where I need to get me to feel better and everything," and he answered "Yes" when asked, "And once [the physicians] finish with what they need, you think you will be back up running full speed?"

*Zero-Damages Finding for Past Medical Expenses*

In his second issue, Kosaka argues that the jury improperly awarded zero damages for his past medical expenses and that the jury's determination as to this category of damages is grounds for a new trial.

"In addition to any other limitation under law, recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant." Tex. Civ. Prac. & Rem. Code Ann. § 41.0105 (West 2008); *see Haygood v. De Escabedo*, 356 S.W.3d 390, 399 (Tex. 2011) (holding that "only evidence of recoverable medical expenses is admissible at trial"). Kosaka stipulated that $44,733.69 was the amount that his health care providers would accept as full payment for the medical services rendered to him up to the time of trial. Kosaka's recovery for past medical expenses then was limited by his stipulation to $44,733.69—"the amount actually paid or incurred by or on [his] behalf." *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.0105.

Assuming without deciding that the award for past medical expenses should have been $44,733.69, we conclude that Kosaka has failed to show that the jury's zero-damages finding supports reversing the trial court's judgment for a new trial. *See* Tex. R. App. P. 44.1 (judgment may not be reversed on appeal on the ground that the trial court made an error of law unless the complained-of error probably caused the rendition of an improper judgment). The amount of settlement credit, $320,000, would still have exceeded the jury's award even if the amount of $44,733.69 was included in the amounts awarded by the jury. *See Galle, Inc. v. Pool*, 262 S.W.3d 564, 573 (Tex. App.—Austin 2008, pet. denied) (noting that take-nothing judgment

9

proper when settlement credit exceeds amount of damages award).  On this basis, we overrule

Kosaka's second issue.[4]

### *Zero-Damages Findings for Physical Impairment and Disfigurement*

In his third issue, Kosaka argues that this Court should reverse the trial court's

judgment and remand for a new trial because the jury improperly awarded zero damages for physical

impairment sustained in the past and disfigurement in the past and future.  We construe Kosaka's

third issue as a challenge to the factual sufficiency of the evidence to support the jury's zero-damages

findings as to these categories of damages.[5]

i)      Standard of Review

Disfigurement, physical impairment, and mental anguish are overlapping categories

of damages.  *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 775 (Tex. 2003).  Reviewing

the factual sufficiency of the evidence for overlapping categories, we first "determine if the evidence

---

[4] In the section of his brief entitled "Summary of Argument," Kosaka also argues that "the jury improperly reduced the amount of future [medical expenses] from an amount in excess of $150,000.00 to an amount of $80,000.00."  He fails to cite authorities or the record for this contention and, therefore, has waived it.  *See* Tex. R. App. P. 38.1(i) (appellant's brief must contain "appropriate citations to authorities and record"); *Mayhew v. Dealey*, 143 S.W.3d 356, 368 (Tex. App.—Dallas 2004, pet. denied) (noting error "waived for inadequate briefing" when brief did not contain a clear and concise argument for the contention made with appropriate citations to authorities and the record); *Jin v. PNC Bank*, No. 03-10-00392-CV, 2011 Tex. App. LEXIS 1751, at *8 (Tex. App.—Austin Mar. 9, 2011, pet. denied) (mem. op.) (finding argument waived for inadequate briefing).

[5] Hook & Anchor also argues that Kosaka's briefing as to his third issue fails to comport with the requirements of rule 38.  *See* Tex. R. App. P. 38.1(i); *Dealey*, 143 S.W.3d at 368.  Because we conclude that the evidence was factually sufficient to support the jury's findings, we need not address this argument.  *See* Tex. R. App. P. 47.1.

unique to each category is factually sufficient" when the appellant, as is the case here, challenges "the jury's failure to find greater damages in more than one overlapping category." *Id*. If the evidence unique to a category is not sufficient, we "consider all the overlapping evidence, together with the evidence unique to each category, to determine if the total amount awarded in the overlapping categories is factually sufficient." *Id*. Because Kosaka bore the burden to prove his damages, we may set aside the challenged zero-damages findings for factual insufficiency only if they are so contrary to "the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias." *See id.* at 775.

We are also mindful that the jury is given considerable discretion and latitude in its findings of personal injury damages. *Weidner v. Sanchez*, 14 S.W.3d 353, 372 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *see also HCRA of Tex., Inc. v. Johnston*, 178 S.W.3d 861, 871 (Tex. App.—Fort Worth 2005, no pet.) ( "The process of awarding damages for amorphous, discretionary injuries such as mental anguish or pain and suffering is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss."(citing *Dollison v. Hayes*, 79 S.W.3d 246, 249 (Tex. App.—Texarkana 2002, no pet.))). Further, we may not substitute our judgment for the jury's. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998); *see also McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986) (trier of fact may believe one witness and disbelieve others, may resolve inconsistencies in the testimony of any witness, and "is afforded considerable discretion in evaluating opinion testimony on the issue of damages").

11

*ii)    Damages for Disfigurement in the Past and Future*

"Disfigurement has been defined as that which impairs the appearance of a person, or that which renders one's appearance unsightly, misshapen, imperfect, or deformed in some manner." *Enright v. Goodman Distrib., Inc.*, 330 S.W.3d 392, 402 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Figueroa v. Davis*, 318 S.W.3d 53, 64 (Tex. App.—Houston [1st Dist.] 2010, no pet.)).

Kosaka points to the "voluminous evidence" in the record to support his challenge to the jury's zero-damages findings, but he fails to point to specific evidence that would support a finding that he was disfigured by the 2008 accident or that he would be disfigured in the future. Our review of the record similarly did not locate evidence to support a finding that Kosaka was disfigured by the accident or that he would be disfigured in the future. Kosaka pulled up his pants leg to show the jury a knee brace that he wore, but there was no evidence to support a finding that the brace made his appearance "unsightly" or otherwise disfigured. As to damages for disfigurement in the future, the evidence showed that he may have two additional surgeries, but this evidence standing alone does not support reversing the trial court's judgment. *See Belford v. Walsh*, No. 14-09-00825-CV, 2011 Tex. App. LEXIS 6179, at *20-22 (Tex. App.—Houston [14th Dist.] Aug. 9, 2011, no pet.) (mem. op.) (upholding jury's finding of zero damages for past and future disfigurement and rejecting argument that proof of surgery is proof of disfigurement because surgery necessarily leaves scars).

On this record, we cannot say that the jury's zero-damages findings for disfigurement in the past and future were so against the great weight and preponderance of the evidence as to be

12

"manifestly unjust, shock the conscience, or clearly demonstrate bias." *See Jackson*, 116 S.W.3d at 775. We therefore conclude that the evidence was factually sufficient to support these findings.

### iii) Damages for Physical Impairment in the Past

Physical impairment damages compensate for the loss of "former lifestyle." *Enright*, 330 S.W.3d at 402; *Patlyek v. Brittain*, 149 S.W.3d 781, 785 (Tex. App.—Austin 2004, pet. denied). To recover damages for physical impairment in the past, Kosaka had to prove "that (1) he incurred injuries that are distinct from, or extend beyond, injuries compensable through other damage elements; and (2) these distinct injuries have had a 'substantial' effect." *Enright*, 330 S.W.3d at 402 (citing *Patlyek*, 149 S.W.3d at 786); *see also Kroger Co. v. Brown*, 267 S.W.3d 320, 324 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (stating "'[p]hysical impairment' encompasses loss of the injured party's former lifestyle, the effect of which must be substantial and extend beyond any pain, suffering, mental anguish, lost wages, or diminished earning capacity"); *Dollison*, 79 S.W.3d at 253 ("Physical impairment is an element of damages that extends beyond loss of earning capacity and beyond any pain and suffering, to the extent that it produces a separate loss that is substantial or extremely disabling.").

Like his argument concerning damages for disfigurement, Kosaka points to the "voluminous evidence" in the record to support his contention that the jury improperly awarded zero damages for physical impairment sustained in the past, but he has failed to point to specific evidence—and we have found none—that would support reversing the trial court's judgment. *See Enright*, 330 S.W.3d at 402. Although there was evidence that he was "limited" physically because of his injuries, the jury was instructed not to compensate him twice for the same loss and awarded

13

him the amounts of $5,000 for physical pain and mental anguish sustained in the past and $20,534 for loss of earning capacity sustained in the past. *See Rentech Steel, L.L.C. v. Teel*, 299 S.W.3d 155, 166 (Tex. App.—Eastland 2009, pet. dism'd) (damages for physical impairment "encompass the loss of enjoyment of life, the effect of which must be substantial and extend beyond any pain, suffering, mental anguish, lost wages, or diminished earning capacity").

On this record, we cannot say that the jury's zero-damages finding for physical impairment sustained in the past was so against the great weight and preponderance of the evidence as to be "manifestly unjust, shock the conscience, or clearly demonstrate bias." *See Jackson*, 116 S.W.3d at 775. We therefore conclude that the evidence was factually sufficient to support this finding and overrule Kosaka's third issue.

## CONCLUSION

For these reasons, we affirm the trial court's judgment.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Rose and Goodwin

Affirmed

Filed:   November 8, 2012

14