

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00276-CV

_____

WILLIAM BLEVINS, Appellant

V.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-259556-12

Dissenting Memorandum Opinion by Justice Birdwell

**DISSENTING MEMORANDUM OPINION**

The faultless victim of a high-impact automobile collision, Appellant William Blevins, sustained uncontroverted, significant head trauma, objectively evidenced by temporary loss of consciousness, short-term memory loss (amnesia), mental disorientation, a subgaleal hematoma (bleeding between the scalp and the skull) to the top of his head, "soft tissue swelling overlying the entire left side of the head," and a sizable headache.[1] Such injuries required emergency transport to a hospital for treatment for pain and neurological evaluation, including a CT scan to rule out intracranial hemorrhage, eventually resulting in a discharge diagnosis of concussion with the prescription of pain medication and medical follow-up, as necessary. Describing these acute, objective, and medically-documented injuries as "limited and relatively insignificant," the majority affirms the jury's award of no damages for past physical pain. *See* Majority Op. at 28. Because the decisions of our court and of other Texas courts compel the opposite result, I would hold that the jury's finding that Blevins sustained no compensable past physical pain whatsoever was so against the

---

[1] In addition to these injuries, Blevins sustained an abrasion on his right leg from his knee to his hip. Because the record reflects that the primary dispute between the parties dealt with the neuropsychological impact and valuation of Blevins's undisputed head trauma, I address only that portion of the evidentiary record.

great weight and preponderance of the evidence as to be manifestly unjust, thereby requiring a new trial. I, therefore, dissent.[2]

**Jury's zero-damages award for past physical pain is contrary to the evidence**

Texas courts have traditionally held that when a factfinder receives uncontested evidence establishing a plaintiff's objective personal injuries, a zero-damages verdict for past physical pain must be reversed and a new trial ordered. *See generally Rumzek v. Lucchesi*, 543 S.W.3d 327, 332–33 (Tex. App.—El Paso 2017, pet. denied) (collecting cases); *see also Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 775 (Tex. 2003) (explaining that a verdict awarding no damages for pain and suffering should not be upheld on appeal if there is "objective, undisputed evidence of a significant injury and the jury could not have compensated the injured party in some other category of damages"); *Lowery v. Berry*, 269 S.W.2d 795, 796–97 (Tex. 1954) (reversing jury's verdict that child suffered no damage due to motor vehicle accident, despite evidence of skull fractures and head lacerations, because verdict was "not only unsupported by any evidence, but [was] directly contrary to all the evidence"); *Monroe v. Grider*, 884 S.W.2d 811, 820 (Tex. App.—Dallas 1994, writ denied) ("When uncontroverted evidence of an objective injury exists, a jury finding that the plaintiff suffered no past pain and suffering is against the great weight and preponderance of the evidence.")

---

[2]Because I concur with the majority's resolution of the other grounds for appeal asserted by Blevins, I address only his factual sufficiency challenge by way of my dissent.

(cited with approval in *Golden Eagle Archery*); *Hammett v. Zimmerman*, 804 S.W.2d 663, 664 (Tex. App.—Fort Worth 1991, no writ) ("When there is uncontroverted evidence of an objective injury, a jury finding that the plaintiff suffered no past physical impairment and pain is against the great weight and preponderance of the evidence.") (cited with approval in *Monroe*); *cf. Estrada v. Dillon*, 44 S.W.3d 558, 561 (Tex. 2001) (affirming application of *Monroe* and *Hammett* objective injury analysis to zero-damages award for past physical impairment).

The principle of objective injury is historically well-developed by this court. For example, in *Hammett*, we explained that to uphold a jury's zero-damages finding in the face of uncontroverted evidence of objective injury, the evidence must have provided the jury a reason for finding that "the injured party's injury was unaccompanied by *any* pain and suffering." 804 S.W.2d at 665. Moreover, we set forth numerous examples of objective injuries that required reversal and a new trial given a zero-damages verdict for past pain and suffering, including, *inter alia*, skull and facial fractures, burns, broken bones, cuts, lacerations, and concussion. *Id.* at 666.[3] Based

---

[3]These exemplars of objective injury continue to be cited in our opinions and the opinions of our sister courts, even after *Golden Eagle Archery. See Davis v. Vaughters*, No. 01-17-00612-CV, 2018 WL 5661317, at *6 (Tex. App.—Houston [1st Dist.] Nov. 1, 2018, no pet.) (mem. op.) (citing *Hammett* exemplars); *Rumzek*, 543 S.W.3d at 333 & n.4 (same); *Laquey v. Cox*, No. 02-17-00005-CV, 2017 WL 4413353, at *2 (Tex. App.—Fort Worth Oct. 5, 2017, no pet.) (mem. op.) (same); *Enright v. Goodman Distrib., Inc.*, 330 S.W.3d 392, 398 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (same); *Cesar v. Torres*, No. 13-07-00471-CV, 2009 WL 2914395, at *3 (Tex. App.— Corpus Christi–Edinburg Aug. 31, 2009, no pet.) (mem. op.) (same).

4

upon the uncontroverted testimony of the plaintiffs' treating physician that his comparative review of radiological studies, performed before and after the underlying motor vehicle accident, revealed a marked lumbar and sacral misalignment in one of the plaintiffs consistent with her complaints of lower back pain, we held that the jury's zero-damages verdict for past pain and suffering of that plaintiff was against the great weight and preponderance of the evidence, thereby requiring reversal and a new trial. *Id.* at 666–68. Stated differently, we held that no rational jury could find that one of the plaintiffs suffered no pain whatsoever. *See id.*[4]

As to the other plaintiff in *Hammett*, although the same treating physician reached a similar diagnostic conclusion based upon her subjective complaints and his physical examination, there were no radiological studies confirming the diagnosis as there were for the other plaintiff. Accordingly, we held that the purely subjective nature of her complaints justified the same jury in finding that she suffered no pain whatsoever. *Id.* at 668–69.[5] Comparing as it does the injuries sustained by similarly

---

[4]The majority cites *Hammett* without acknowledging this application of the objective injury principle and without expressly overruling it. *See* Majority Op. at 23, 28. *See also Lamb v. Franklin*, 976 S.W.2d 339, 341 (Tex. App.—Amarillo 1998, no pet.) (citing *Hammett* and stating that "[t]o uphold a jury's finding that an injured party incurred no damages for past pain and suffering, the jury must have found by a preponderance of the evidence that no pain and suffering accompanied the injury").

[5]Although both of the plaintiffs in *Hammett* waited to seek medical treatment until the day after the accident, *see id.* at 664, 667, 668, their treating physician obtained radiological confirmation of only the former's diagnosis because her neck injury was sufficiently "intractable" that he hospitalized her for a neurological consult and spinal

situated plaintiffs in the same accident, *Hammett* remains this court's best example for distinguishing objective from purely subjective injuries when addressing zero-damages challenges, confirming that jurors may exercise their prerogative to disbelieve evidence of the latter,[6] but not the former. *See Rumzek*, 543 S.W.3d at 335 (discussing *Hammett* as exemplar of this court's zero-damages decisions); *see also* 28 Tex. Jur. 3d *Damages* § 279 (2019) (citing *Hammett* as primary authority for objective injury analysis).

The majority recognizes this traditional, well-developed analysis, stating that when "testimony about pain and mental anguish is accompanied by uncontroverted, objective evidence of an injury—for an obvious example, loss of a limb, or broken bones—appellate courts are more likely to overturn a zero-damages award for past pain and mental anguish." Majority Op. at 20 (citing *In re State Farm Mut. Auto. Ins.*, 483 S.W.3d 249, 263 (Tex. App.—Fort Worth 2016, orig. proceeding)). Nevertheless, anticipating that the supreme court will eventually confirm its implication in *Golden*

---

manipulation under anesthesia, *id.* at 667. The latter required no such hospitalization or treatment. *Id.* at 668. As a result, exercising their exclusive prerogative to assess the credibility of the evidence, the jury could have disbelieved the latter's purely subjective profession of pain, but not the objective evidence documenting the former's.

[6] *See also McGuffin v. Terrell*, 732 S.W.2d 425, 428 (Tex. App.—Fort Worth 1987, no writ) ("The jury was accorded the privilege of considering medical reports indicating no objective symptoms and were not compelled to accept Dr. Murphy's opinion deductions. The jury apparently did not believe appellant's testimony as to the severity of her injuries nor her alleged pain and disability. The jury may disbelieve an interested witness even if uncontradicted.").

*Eagle Archery* that an objective injury can be sufficiently insignificant or *de minimis* as to permit a jury to exercise its credibility prerogative to disbelieve that the plaintiff experienced *any* physical pain associated therewith,[7] the majority relies on certain pre- and post-*Golden Eagle Archery* decisions that either conflict with or are factually distinguishable from our analysis in *Hammett*. Majority Op. at 21.

For example, in *In re State Farm*, upon which the majority primarily relies, we recited the insignificant-injury principle and applied it when the plaintiff was stopped at a red light, the defendant bumped the plaintiff's car from behind at less than four miles per hour, the plaintiff's car sustained minor damage, the plaintiff left the scene of the accident without feeling injured, the plaintiff drove his vehicle to work and worked the rest of the day without problems, and the plaintiff later received diagnoses of muscle spasms and a disc protrusion or herniation. 483 S.W.3d at 252–60. Under those circumstances, we held that the jury could have reasonably disregarded the objective evidence as related to a pre-existing condition and found that the plaintiff

---

[7]Although the supreme court suggested in *Golden Eagle Archery* that a zero-damages verdict for past pain and suffering could be affirmed if the evidentiary record revealed that the injury was not "significant," the court did not and has yet to discuss what would constitute such an "insignificant" or *de minimis* objective injury. *See* 116 S.W.3d at 775 (explaining that a verdict awarding no damages for pain and suffering should not be upheld on appeal if there is "objective, undisputed evidence of a significant injury and the jury could not have compensated the injured party in some other category of damages"). As cited above, the court has affirmed, both implicitly and expressly, the *Hammett* objective injury analysis for zero-damages awards in personal injury cases, which is clearly predicated upon a jury's credibility prerogative. *See supra* at 4.

"did not suffer any physical pain and suffering as a result of the accident." *Id.* at 264.

We explained in part,

> It was undisputed that the accident occurred at a very low speed, causing less than $800 in damage to [the plaintiff's] car and no damage to [the defendant's] car. The jury heard conflicting evidence about the severity of [the plaintiff's] injuries and whether his injuries were caused by the collision.[8] [The plaintiff] was instructed to return to the CareNow clinic in seven to fourteen days if his condition did not improve or return immediately if his condition worsened, but there was no evidence that he returned to the clinic.

*Id.*

Similarly, other post-*Golden Eagle Archery* decisions affirm zero-damages verdicts, but only when evidence of the existence or likely cause of the objective injury invoked the jury's credibility prerogative, *not when the existence or likely cause of the injury was uncontested. See Davis*, 2018 WL 5661317, at *6–7 (basing holding on evidence that after a car accident, the responding officer reported that the plaintiff and her passenger were "not injured" and that her vehicle sustained "minimal damage," the plaintiff did not seek treatment for several days thereafter, she gave an inconsistent history of pain associated with the accident, and the disc protrusion or herniation revealed by MRI could have been age-, not trauma-related); *Rumzek*, 543 S.W.3d at 334–35 & nn. 5–6 (explaining that after a car wreck, the plaintiff was "diagnosed

---

[8]Not only did the radiological studies performed on the plaintiff after the accident alternatively reveal no objective findings by x-ray, then subsequently either a protruding or herniated disc by MRI, the plaintiff's pre-accident medical history included at least two previous whiplash injuries that could have been the source of such conflicting findings. *See In re State Farm*, 483 S.W.3d at 254–56.

solely with soft tissue injuries" and his "x-rays were negative for any physical injury, and instead only indicated that [he] was suffering from degenerative disc disease"); *Laquey*, 2017 WL 4413353, at *2 (when jury awarded damages for past pain and past and future medical expenses to the plaintiff arising out of car accident, holding that evidence of purely subjective complaints of pain was sufficient to justify zero-damages award for future pain); *Enright*, 330 S.W.3d at 395, 399 (noting that although air conditioning condenser unit fell and hit plaintiff, he merely pushed the unit away, neither showed nor expressed any evidence of pain, then declined to report the accident or receive immediate treatment at a hospital); *Rochester v. Acevedo*, No. 02-04-00177-CV, 2005 WL 1120023, at *1 (Tex. App.—Fort Worth May 12, 2005, no pet.) (mem. op.) (basing holding on evidence that after an accident in which the front bumper of the defendant's vehicle struck the middle back bumper of the plaintiff's vehicle, the responding police officer, discerning no injuries, made no report of the accident, and the plaintiff drove himself home, waiting eleven days before seeking treatment for pain); *see also Biggs v. GSC Enters.*, 8 S.W.3d 765, 767 (Tex. App.—Fort Worth 1999, no pet.) (holding same when, at the scene of the accident, the plaintiff told the responding officer that he was not hurt, and his medical history included a chronic, pre-existing back condition that the jury could have associated with any complaints of pain); *Blizzard v. Nationwide Mut. Fire Ins.*, 756 S.W.2d 801, 804–06 (Tex. App.—Dallas 1988, no writ) (noting in evidentiary summary that after a car accident, the plaintiff got out of her car, exchanged information with the other driver, went

home, did not seek medical attention until the next day, and was never hospitalized); *McGuffin*, 732 S.W.2d at 426 (noting that after a car accident, the plaintiff did not complain of any injury at the scene, responded that "she did not know" whether she was injured, returned home, later complained of pain, and first showed an objective injury three weeks after the accident).

Summarizing these decisions, an objective injury appears to be sufficiently insignificant or *de minimis* to sustain an award of zero damages for past physical pain when (1) the severity of the accident involves a low to moderate impact resulting in little or moderate damage to the plaintiff's vehicle, (2) the plaintiff does not evidence the objective injury at the scene of the accident or personally treats it as insignificant by declining to seek immediate medical diagnosis and treatment, (3) subsequent diagnostic examination reveals no or minimal objective sequelae of injury that are not also attributable to other causes such as ordinary degeneration or a pre-existing injury or condition, and (4) the plaintiff's subjective medical history and complaints are the primary basis for diagnosis and treatment. When sufficient evidence of these criteria exists, a jury is deemed within its credibility prerogative to disregard or disbelieve objective evidence of physical injury.

Applying these criteria, however, the objective, undisputed evidence that Blevins suffered significant head trauma does not support the majority's insignificant-injury conclusion. Initially, as to the severity of the accident, the uncontested photographic and testimonial evidence demonstrated that at least two separate

vehicles struck Blevins with sufficient force to completely destroy both front wheel wells of his vehicle and trigger the deployment of the driver-side air bag. Such damage required his forceable extraction from the vehicle and completely disabled its continued operation. Accordingly, nothing about the severity of the accident permitted the jury to disregard its occurrence as a possible source of traumatic personal injury.

Second, the undisputed evidence shows that Blevins sustained significant head trauma not attributable to any other cause but the collision. Not only did he lose consciousness as a result thereof, a disinterested bystander motorist who witnessed the accident thought Blevins was dead as she approached his vehicle to help. This same Good Samaritan thereafter observed him regain consciousness, but described his level of consciousness as confused and disoriented: "The man, you could tell something was wrong with him because his eyes was open, but he was not comprehending. . . . You could see in his eyes that the lights--the lights were on, but nobody was home; there was just nothing there."[9]

---

[9]Dr. Andrew Houtz confirmed this motorist's "accident scene" observation of Blevins's loss of consciousness and mental disorientation, attributing them to the high-impact nature of the collision:

> [T]he severity of the blow to his head was of such force that it . . . knocked him out. Even when he regained consciousness, he experienced a period of confusion and disorientation, which, again, lets us know that his brain was not processing the way it should have been for a period of time after the head injury.

11

Blevins thereafter required emergency transport to a hospital for treatment for pain and neurological evaluation. With a working diagnosis of head trauma, the EMTs documented his loss of consciousness, memory loss, and mental disorientation, including repetitive questioning, as well as a hematoma to the top of his head:

> Arrived to find pt. c-spined and backboarded in the back of ambulance on[ ]scene. Medstar crew advised that pt. was restrained driver o[f] one of the vehicles in a 4 car mvc. Pt. had hematoma to head with repetitive questioning, with positive LOC [loss of consciousness]. Pt. c/o head pain. Pt. relays that he doesn't know what happen[ed], and kept asking what my na[m]e was. Pt. advised that he remembers being in the ambulance, but no[t] how he ended up there. Pt. had hematoma to top of head. Pt. was treated, monitored and transported without further injury or illness.

In documenting his mental disorientation, the EMTs employed the Glasgow Coma Scale, a "scale for measuring the level of consciousness, especially after a head injury, in which scoring is determined by three factors: amount of eye opening, verbal responsiveness, and motor responsiveness." *See Rio Grande Reg'l Hosp., Inc. v. Villarreal*, 329 S.W.3d 594, 601 n.6 (Tex. App.—Corpus Christi–Edinburg 2010, pet. dism'd by

---

> . . . .

> So we know that an event happened that was severe enough to kind of knock his brain offline for a particular period of time.

State Farm never contested these observations of the Good Samaritan, nor this portion of Dr. Houtz's testimony identifying the high-impact nature of the accident as their source.

agr.) (citing Glasgow Coma Scale, *available at* https://medical-dictionary. thefreedictionary.com/Glasgow+Coma+Scale (last visited Feb. 26, 2019)).

Contrary to the majority's suggestion that Blevins's "near perfect total" on the Glasgow assessment left the jury free to disregard his injury as insignificant, *see* Majority Op. at 9–10, 28–29, the EMTs objectively confirmed he suffered from some degree of mental confusion on two of the three Glasgow assessments they had conducted before transporting him to the hospital. Finally, the EMTs documented significant "Headache/Migraine" of a severity of 5 on a scale of 10. At the time they left the scene of the accident, there was clear, uncontested objective evidence of significant head trauma, and the pain associated therewith, and absolutely no basis for the jury to conclude that Blevins suffered no pain whatsoever as a result of the collision.

Third, upon arrival at the hospital, the emergency room staff admitted Blevins complaining of headache and repetitive questioning. Before he was seen by a physician, the staff performed three separate Glasgow assessments on Blevins, each documenting some degree of mental confusion consistent with the EMTs' previous assessments.

The attending physician's notes subsequently confirmed Blevins's chief complaint as headache with loss of consciousness and memory loss:

> William Blevins is a 54 y.o. male who presents to the ED for HA [headache] s/p MVC. Pt was the restrained driver in a PT cruiser. Pt states that he does not remember the wreck. According to nursing, Pt

was c/o the HA at the top of his head. Positive neck pain but negative CP [chest pain] or ABD [abdominal] pain. The first thing that Pt remembers after the wreck is being in the ambulance. Pt states that his left thumb hurts when he moves it. According to mother, another driver ran a red light and hit Pt on the passenger side. Pts car ended up in a tree and 4 other cars were involved. Pt does not remember when his last tetanus shot was. Pt is not on any medication at home. There are no other Sx [symptoms] at this time.

By his review of systems, the physician noted Blevins was "positive" for headaches and neck pain, but negative for dizziness, light-headedness, or mental confusion. By his physical exam, the physician observed a contusion to the top of the head, but found Blevins to be neurologically intact, giving him a Glasgow assessment with no deficits. The doctor did note, however, that Blevins was "[a]mnestic of events" leading to his transport and admission for emergency diagnosis and treatment.

As a result of his initial assessment, the doctor prescribed intravenous morphine for moderate to severe pain, every two hours as needed. As to his differential diagnosis, the doctor included the following possible conditions: "ICH [intracranial hemorrhage], Concussion, Contusion, Fx [fracture], Sprain." To rule out one or more of these conditions, the doctor ordered x-rays of the chest, pelvis, left knee, and right leg, and CT scans of the head and spine. The radiologist's impression from the CT scan of the head was: "No definite acute intracranial process. There is soft tissue swelling overlying the entire left side of the head. No underlying fracture is seen."

After Blevins spent approximately five hours in the ER, the doctor eventually discharged him as suffering from a concussion, prescribed medications for both pain and nausea, and recommended follow-up with his family physician, as needed. The doctor's discharge instructions indicated that a concussion requires a few days for recovery and that, during that time, Blevins might experience continued headaches. But the doctor further instructed Blevins to seek immediate medical care if he experienced severe, persistent headaches.[10]

Finally, Blevins's subjective medical history and complaints were not the *primary* basis for his emergent diagnosis and treatment. At the time of his discharge, diagnostic evaluation of Blevins, post-accident, revealed clear, objective evidence of significant head trauma in the form of (1) a concussion, (2) a hematoma/contusion to the top of, and swelling along the entire left side of, his head, as well as (3) the pain associated therewith. Indeed, his loss of consciousness, memory loss, hematoma, swelling, and mental confusion were all objective symptoms of or radiological findings consistent with a traumatic head injury, and the discharge diagnosis of concussion has previously been noted by this court in *Hammett* and held by our sister courts to remove a zero-damages verdict from a jury's credibility prerogative. *See Hammett*, 804

---

[10]Even though consistent with his discharge instructions, to the extent the record reflects that Blevins continued to suffer and receive treatment for headaches for some time after the accident, the existence and extent of his *post-discharge* pain was a matter of purely subjective interpretation, such that the jury was free to wholly discount this testimony, even under *Hammett.*

S.W.2d at 666 (citing *Del Carmen Alarcon v. Circe*, 704 S.W.2d 520, 521 (Tex. App.—Corpus Christi 1986, no writ) (holding jury "legally bound to make some award" for past physical pain due to reverse curvature of spine, cerebral concussion, and cervical and lumbar sprains)).

In fact, in *Horn v. State Farm Insurance*, our sister court in Tyler held that the jury's zero-damages verdict in a factually similar uninsured motorist case was against the great weight and preponderance of the evidence because the uncontested, objective evidence established that the plaintiff sustained a "moderately severe" cerebral concussion, as well as sprains of the neck and cervical spine. 567 S.W.2d 266, 268 (Tex. App.—Tyler 1978, no writ). Similar to Blevins, the insured was the victim of a high-impact collision that knocked her vehicle into a ditch; she experienced bleeding and bruising of her face, neck, and right shoulder; and she was transported by ambulance to a hospital where she was admitted for evaluation and treated with pain medication for headache. *Id.* at 267–68. Although the jury awarded sums for past medical and hospital care, as well as loss of past earnings, it found that the insured suffered no past physical pain and suffering. *Id.* at 267. In reversing and remanding for a new trial, the court of civil appeals held,

> Although the amount of damages is ordinarily left to the discretion of the jury under the evidence before them, the jury cannot ignore the undisputed facts and arbitrarily fix an amount neither authorized nor supported by the evidence. In the instant case, there is nothing in the record indicating that [the insured] was not injured or that she did not suffer any pain. The undisputed facts disclose that [she] did suffer pain. Thus, the finding of the jury that [she] suffered no damages

16

is not only unsupported by any evidence, but directly contrary to all the evidence. In our view[,] the verdict was manifestly wrong[,] and the trial court should have granted a new trial.

*Id.* at 268 (citations omitted).

Applying *Hammett* and *Horn*, there is nothing in this record indicating that Blevins was not injured by the collision or that he did not suffer any pain as a direct result thereof. Accordingly, there was absolutely no basis for the jury to disregard the objective evidence of head trauma and conclude that Blevins suffered no pain whatsoever as the immediate result of the collision.

The majority's insignificant-injury analysis appears to predicate its holding that the jury was within its credibility prerogative to disregard this evidence, at least in part, on the grounds that Blevins "never set the stage for an award of damages" based on his objective injuries, particularly by failing to reference the evidence pre-admitted in the form of his medical and hospital records. *See* Majority Op. at 23, 27–31. While it is true that the primary foci of his evidentiary presentation were the alleged long-term neuropsychological consequences of the collision, as particularly articulated through the testimony of Dr. Houtz, Blevins did not expressly so limit his request for damages. For example, he specifically described his concussion as a "severe injury" during opening statement. He also told the jury about the internal bleeding in and swelling of his head.

Because the parties waived a transcription of closing arguments, the record does not reveal what Blevins urged the jury to answer in response to the damages

17

question in the charge, but there is no doubt he asked the jury to compensate him for "[p]hysical pain and mental anguish sustained in the past" in an amount more than zero. Moreover, given the fact that State Farm agreed to the admission of Blevins's medical and hospital records for the jury's consideration on this very question—and never once challenged either his discharge diagnosis or any of the objective findings of head trauma made by the EMTs or the emergency room staff in reaching such diagnosis, including those of the diagnostic radiologist and the treating physician,[11]—it is highly unlikely that State Farm actually urged a zero-damages verdict upon the jury, particularly when it could have reasonably and more credibly argued for a valuation of damages well within the approximately $70,000 settlement credit to which it was entitled and still obtained a "take nothing" defense judgment.

---

[11]The majority appears to suggest that because Blevins was sparing in his references to pain and never specifically referenced the objective findings supporting its existence in his medical and hospital records, our factual sufficiency review should not include such evidence. Majority Op. at 23. We have been granted no such discretion, however, to presume to know what evidence the jury did or did not consider during its deliberations, or to otherwise depart from the general rule that we must consider "all of the evidence"—including admitted exhibits—in our factual sufficiency review. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

For all of these reasons, I would hold that the jury's finding of zero damages for Blevins's past physical pain was so against the great weight and preponderance of the credible evidence as to be clearly wrong and unjust and was therefore based on factually insufficient evidence. I would sustain his second issue and remand for a new trial. Because the majority does not, I dissent.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: February 28, 2019