**Motion for Rehearing Overruled, Majority and Concurring Memorandum Opinions Issued August 15, 2023 Withdrawn, Judgment Issued August 15, 2023 Vacated, Affirmed, and Substitute Memorandum Majority Opinion and Substitute Memorandum Concurring Opinion filed May 2, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00558-CV

---

## DANIEL OGBONNA, KINGSLEY EKWOROMADU, OLIMAX GROUP INC., OLIMAX MANUFACTURING, LLC, AND ROYALBRAVE INC., Appellants

### V.

### NELIA CRUICKSHANK, Appellee

---

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-64885**

---

### SUBSTITUTE MEMORANDUM MAJORITY OPINION

Appellants Daniel Ogbonna, Kingsley Ekworomadu, Olimax Group, Inc., Olimax Manufacturing, LLC, and RoyalBrave, Inc. appeal from the trial court's judgment favoring appellee Nelia Cruickshank. Cruickshank sued appellants alleging, among other things, that she, Ogbonna, and Ekworomadu agreed to form

a partnership to sell personal protective equipment (PPE) during the COVID-19 pandemic and Ogbonna and Ekworomadu failed to comply with that agreement. Based on a jury verdict largely favoring Cruickshank, the trial court entered judgment requiring Ogbonna and Ekworomadu to pay Cruickshank specified damages for the failure to comply with the agreement as well as for fraud. The court also ordered Ogbonna and Ekworomadu to pay Cruickshank's attorney's fees. In three issues on appeal, appellants assert that Cruickshank was not entitled to any recovery for breach of a partnership agreement, fraud, or attorney's fees. We affirm.

The original opinions in this case issued on August 15, 2023. Appellants have filed a motion for rehearing. We overrule the motion for rehearing, withdraw our previous opinions, and issue these substitute opinions.

### *Background*

In early 2020, during the beginning of the COVID-19 pandemic, Cruickshank, Ogbonna, and Ekworomadu discussed the creation of a new business venture to answer the growing need for PPE equipment, such as isolation gowns. There is no dispute in this case that the three individuals agreed to work together in some capacity or that they did not initially, or at any time, memorialize their agreement in a formal writing. Ogbonna has business experience and a Master of Business Administration degree, Ekworomadu has engineering and project management experience, and Cruickshank has extensive experience in marketing within the healthcare industry. In order to get the business up and running quickly, the parties began by using an existing bank account owned by Olimax Group, Inc., a company owned by Ogbonna. The parties also incorporated Olimax Manufacturing as part of their PPE business. RoyalBrave Inc., another entity

involved in this case, was owned by Ekworomadu.[1] The business was referred to at times as Olimax Medical Supplies, and Cruickshank was referred to as CEO.

The business appears to have been quickly successful, making millions in profits in just a few months, but disputes began to arise regarding the nature of the business relationship between Cruickshank, Ogbonna, and Ekworomadu, and Cruickshank ultimately filed the present lawsuit in October 2020. In her petition, Cruickshank raised claims for breach of an agreement to form a partnership, fraud, fraud by nondisclosure, and breaches of fiduciary duties. At trial, Cruickshank principally asserted that she, Ogbonna, and Ekworomadu had agreed to form a partnership to sell PPE equipment and that she was entitled to an equal partnership share in the business. Meanwhile, Ogbonna and Ekworomadu insisted that the two of them had started a PPE business and invited Cruickshank to participate on the basis of her receiving only a share of the profits she generated and not the profits of the business as a whole and certainly not an equal partnership share.

The 35-question jury charge submitted numerous claims, defenses, and measures of damages. Because of the structure of the charge, not all of the questions were answered or are relevant to this appeal. Question no. 1 asked whether Cruickshank, Ogbonna, and Ekworomadu had an agreement to form a partnership to sell PPE, and it provided several instructions to guide the determination, including a list of "[f]actors indicating the creation of a partnership." The jury answered "[y]es" to this question. Question no. 2 asked whether Olimax Manufacturing was property of the partnership, and the jury again answered "[y]es." In response to Question no. 3, the jury found that Ogbonna and Ekworomadu failed to comply with the agreement. Questions four through eight

---

[1] Although Olimax Group, Olimax Manufacturing, and RoyalBrave are all listed as appellants in this appeal, none of the issues on appeal directly concern them as parties.

inquired about various defenses or excuses for noncompliance by Ogbonna and Ekworomadu, including statute of frauds, prior material breach, repudiation, fraud, and waiver, but the jury did not find that any of the defenses applied in this case. In response to Question no. 9, the jury found that Cruickshank's damages for Ogbonna's and Ekworomadu's failures to comply amounted to $5,130,673.

Question no. 15 asked whether Ogbonna and Ekworomadu had complied with a list of fiduciary duties, and the jury found that they had complied. In response to Question no. 22, the jury found that Ogbonna and Ekworomadu committed fraud against Cruickshank based on the instructions and definitions provided. In Question no. 23, the jury found her damages for fraud to be $525,000.

In its judgment, the trial court stated that "Cruickshank and [] Ogbonna and [] Ekworomadu formed a partnership to sell personal protective equipment. [And] Plaintiff's interest in the partnership was terminated no later than November 16, 2020." The court awarded Cruickshank the amounts found by the jury as damages on her breach of the agreement and fraud claims as well as $866,248.67 in attorney's fees plus additional amounts in the event of an appeal. The court further ordered that the parties take nothing on their remaining claims.

### *Breach of Agreement to Form a Partnership*

In their first issue, appellants contend that Cruickshank was not entitled to any recovery for breach of an agreement to form a partnership because the jury's findings that Cruickshank, Ogbonna, and Ekworomadu agreed to form a partnership and Ogbonna and Ekworomadu failed to comply with that agreement cannot support the damages awarded. Specifically, appellants argue that (1) the Texas partnership statute controlled Cruickshank's rights and remedies as a putative partner, but evidence conclusively established that the three principals created a relationship under the law governing corporations rather than the law

4

governing partnerships, thus foreclosing the partnership claim, citing Texas Business Organizations Code sections 152.002(a) and 152.051; (2) the alleged partnership must have been terminated as a whole pursuant to subchapter I of the partnership statute, which would not have resulted in the type of damages awarded to Cruickshank, citing numerous Business Organizations Code provisions, including sections 11.057(a), 152.003, and 152.701 "et seq.," as well as *Bohatch v. Butler & Binion*, 977 S.W.2d 543, 544–47 (Tex. 1998); and (3) Cruickshank failed to obtain a specific finding of a breach of any recognized partnership duty, citing Business Organizations Code sections 152.204 and 152.206. As will be explained below, the first argument is not supported by the evidence, the second argument was not preserved below, and the third argument need not be reached as it is merely an attempt to preempt a possible argument that Cruickshank could raise on appeal.

**Creation argument.** Under their first argument, appellants contend that the business at issue in this case could not have been a partnership because the evidence conclusively established that it was created as a corporation, citing Tex. Bus, Org. Code § 152.051(c).[2] For this reason, appellants argue that jury charge Question no. 1 was immaterial. Although Cruickshank urges otherwise, we will assume for the sake of analysis that this argument was preserved for our review. In support of their contention, appellants cite evidence that when the business was

---

[2] Section 152.051(c) provides as follows:

An association or organization is not a partnership if it was created under a statute other than:

(1) this title and the provisions of Title 1 applicable to partnerships and limited partnerships;

(2) a predecessor to a statute referred to in Subdivision (1); or

(3) a comparable statute of another jurisdiction.

first starting up, it temporarily used preexisting assets—including primarily a bank account—of Olimax Group, Inc., which was a corporation owned by Ogbonna. We disagree that this evidence conclusively established that the parties' new business was created as a corporation and not a partnership, particularly in light of significant other evidence, including Cruickshank's testimony, supporting the conclusion that the parties agreed to form a partnership, not a corporation. We therefore find no merit in appellants' first argument under issue one.

**Termination argument.** Appellants second argument under issue one is of a different nature than its first argument. Whereas the first argument asserted that appellants conclusively established a fact that rendered Question no. 1 immaterial, the second argument asserts essentially that the trial court submitted the wrong law in Question no. 3 on breach and Question no. 9 on fair market value damages. Specifically, in the second argument, appellant's assert that the trial court should have considered the case as a termination of a partnership case governed by termination rules under the partnership statutes rather than as a failure to comply with an agreement to form a partnership as was submitted in Question no. 3. Appellants then argue that the trial court submitted an incorrect query on relief in Question no. 9.

In response, Cruickshank asserts that appellants failed to raise either of these points in the trial court and thus did not preserve them for appeal. *See generally* Tex. R. App. P. 33.1(a) (providing that appellate complaints generally must be preserved in the trial court by a timely and sufficiently specific request, objection, or motion). Appellants acknowledge that they did not raise these specific points below; however, they insist that they preserved the issues by making general objections in a post-verdict motion challenging the sufficiency of the evidence, citing *Arkoma Basin Exploration Co. v. FMF Associates 1990-A, Ltd.*, 249 S.W.3d

380, 387–88 (Tex. 2008) ("Generally, a no-evidence objection directed to a single jury issue is sufficient to preserve error without further detail."), and *Greene v. Farmers Insurance Exchange*, 446 S.W.3d 761, 764 n.4 (Tex. 2014) ("We do not consider *issues* that were not raised in the courts below, but parties are free to construct new *arguments* in support of issues properly before the Court.") (emphasis in original).

While these cases indicate that a general objection may be sufficient to preserve a legal sufficiency issue, including based on arguments not expressly made in the trial court, the cases do not alter the well-established rule that "it is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge." *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000); *Deluxe Barber Sch., LLC v. Nwakor*, 609 S.W.3d 282, 293 (Tex. App.—Houston [14th Dist.] 2020, pet. denied); *see also GB Tubulars, Inc. v. Union Gas Operating Co.*, 527 S.W.3d 563, 568 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("Where, as here, the parties have not objected at trial to the substance of the law set forth in the jury charge, we review sufficiency of the evidence in light of legal standards contained in the unobjected-to charge."). Appellants second argument under their first issue essentially contends that the trial court submitted the wrong law in questions 3 and 9, and they do not assert that they preserved their positions on appeal by objecting to the charge. Accordingly, we cannot consider these points. *See Osterberg*, 12 S.W.3d at 55; *Deluxe Barber Sch.*, 609 S.W.3d at 293; *GB Tubulars*, 527 S.W.3d at 568; *see also Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 794 (Tex. 2020) (following *Osterberg* where no objection was made to the charge and rejecting assertion party was entitled to judgment because it conclusively proved ground that was not submitted to the jury); *Green v. Dall. Cnty. Sch.*, 537 S.W.3d 501, 502, 504–05

7

(Tex. 2017) (following *Greene* on preservation but looking solely to the jury charge for the law governing the sufficiency of the evidence analysis); *Warrior Energy Servs. Corp. v. Oilfield Specialties, LLC*, No. 14-20-00069-CV, 2022 WL 3655417, at *2–3 & n.3 (Tex. App.—Houston [14th Dist.] Aug. 25, 2022, no pet.) (mem. op.) (following *Arkoma* regarding preservation but then citing *Osterberg* and looking to the jury charge for sufficiency of the evidence analysis).[3]

**Preemptive argument.** Lastly, as mentioned above, appellants third argument under their first issue merely attempts to preempt an argument Cruickshank could make on appeal should we agree with appellants on their second argument. Because appellants' second argument was not preserved, their third argument is moot and we need not address it. Finding no merit in any of appellants' arguments under their first issue, we overrule that first issue.

### *Fraud*

In their second issue, appellants contend that Cruickshank was not entitled to any recovery on her fraud claim. Under this issue, appellants primarily challenge the legal sufficiency of the evidence to support the jury's findings regarding fraud and damages resulting from fraud. When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and

---

[3] In a letter brief, appellants also cited a number of opinions written by members of this panel following *Greene*, but none of the cited opinions involved legal sufficiency complaints on claims tried to a jury. *See Childress v. Palo Pinto Cty.*, No. 14-19-00783, 2021 WL 4472562, at *3 (Tex. App.—Houston [14th Dist.] Sept. 30, 2021, no pet.) (mem. op.) (holding issue was waived in appeal from bench trial); *Methodist Hosp. v. Addison*, 574 S.W.3d 490, 507–08 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (Christopher, J., concurring) (appeal of ruling on sufficiency of medical malpractice expert report); *Cent. Petroleum Ltd. v. Geoscience Res. Recovery, LLC*, 543 S.W.3d 901, 924 n.15 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (appeal of denial of a special appearance); *Menon v. Water Splash, Inc.*, No. 14-14-00012-CV, 2018 WL 344040, at *3–4 (Tex. App.—Houston [14th Dist.] Jan. 9, 2018, no pet.) (appeal from no answer default judgment) (mem. op.); *Bansal v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 502 S.W.3d 347, 352 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (appeal from ruling on plea to the jurisdiction).

indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827. Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the conclusion under review. *Id.*

Regarding the challenge to the damages finding, while a factfinder may not arbitrarily assess an amount not authorized or supported by evidence at trial by "pull[ing] figures out of a hat," we will not disregard the factfinder's determination of damages merely because its reasoning in reaching its figures is unclear. *Picard v. Badgett*, No. 14-19-00006-CV, 2021 WL 786817, at *17 (Tex. App.—Houston [14th Dist.] Mar. 2, 2021, no pet.) (mem. op.) (quoting *Enright v. Goodman Distribution, Inc.*, 330 S.W.3d 392, 403 (Tex. App.—Houston [14th Dist.] 2010, no pet.)). A factfinder generally has discretion to award damages within the range of evidence presented at trial. *Id.* (citing *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002)).

The fraud question in the charge read as follows:

QUESTION NO. 22

Did the defendants commit fraud against Nelia Cruickshank?

Fraud occurs when (1) a party makes a material misrepresentation, (2) the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and (3) the misrepresentation is made with the intention that it should be acted on by the other party, and (4) the other party relies on the misrepresentation and thereby suffers injury.

Fraud also occurs when (1) a party fails to disclose a material fact within the knowledge of that party, (2) the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth, and (3) the party intends to induce the other party

9

to take some action by failing to disclose the fact, and (4) the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

"Misrepresentation" means (1) a false statement of fact, or (2) a promise of future performance made with an intent, at the time the promise was made, not to perform as promised.

The fraud damages question read in relevant part as follows:

### QUESTION NO. 23

What sum of money, if any, if paid now and in cash, would fairly and reasonably compensate Nelia for her damages, if any, that were proximately caused by the conduct you have found in response to Question 22?

Consider the following element of damages, if any, and none other: the difference between the value of what Nelia was promised by Defendant(s), if any, and the value of what she received, if any.

The jury answered the liability question with a "[y]es" for both Ogbonna and Ekworomadu and answered the damages question with "$525,000."

Cruickshank asserts that the fraud award was based on evidence that Ogbonna and Ekworomadu had taken PPE funds that should have been used or held for the partnership and distributed it to themselves as salary and bonuses while concealing that fact from her.[4] Cruickshank cites evidence that while the three putative partners had not had any specific discussions about compensation, they had talked about equity, being equal partners, and being able to disburse their

---

[4] As Cruickshank points out, she alleged under her fraud claim in her live petition that

Defendants further took PPE Venture funds for their direct, personal benefit and fraudulently concealed that they were doing so. Defendants knew that they were in control of the financial accounts and certain operational aspects of the PPE Venture to the exclusion of Mrs. Cruickshank. Indeed, they knew that she could not discover their fraudulent conduct because they actively concealed it and abused their position to conceal it.

10

equity only once the business was profitable and there were sufficient funds to keep the business running. Cruickshank also cites evidence that between them, Ogbonna and Ekworomadu signed employment contracts that awarded each a salary and a guaranteed annual bonus. Ekworomadu was subsequently given a $525,000 bonus and Ogbonna a $517,500 bonus, but they kept the fact of these contracts, salaries, and bonuses from Cruickshank; controlled and did not allow her access to the business's financial records when she requested; and did not award her a contract, salary, or bonus. Cruickshank further asserts that she continued to work on behalf of the business without compensation while being kept in the dark regarding the contracts, salaries, and bonuses. Cruickshank notes that the $525,000 the jury assessed as fraud damages matches the amount of Ekworomadu's bonus and was close to the amount of Ogbonna's bonus, which suggests the jury viewed the bonuses either as a distribution of equity to which Cruickshank was entitled to an equal share or a diminution of the fair market value of Cruickshank's interest in the partnership.

Appellants initially respond to this view of the evidence by pointing out that during discussions with the trial judge on the fraud claim and in closing argument to the jury, Cruickshank described her fraud theory as an alternative to her breach of an agreement to form a partnership claim, i.e., that she was promised an equal equity interest in a partnership but never received it. Appellants suggest that these representations somehow prevent Cruickshank from now suggesting her fraud claim was anything other than an alternative to her breach claim. Appellants, however, make no cogent legal argument and cite no authority suggesting that counsel's argument to the court and summation to the jury restricted the jury's consideration of the evidence in this manner, and we are aware of no such authority. *See generally* Tex. R. App. P. 38.1(i) (requiring that appellate briefs

11

"must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *In re S.A.H.*, 420 S.W.3d 911, 929 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (declining to craft appellant's argument for him). Moreover, appellants have not alleged that there was error in the jury charge on fraud or suggested that any other law controls, so we review the legal sufficiency of the evidence in light of the charge as given. *See generally Osterberg*, 12 S.W.3d at 55; *GB Tubulars*, 527 S.W.3d at 568.

Appellants additionally point out that while Question no. 22 included fraud by nondisclosure as an option, Question no. 23 limited fraud damages to the difference between the value Cruickshank was promised by Ogbonna and Ekworomadu and the value that she received. And appellants argue that the fraud damages award amounted to an impermissible double-recovery for Cruickshank, citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 (Tex. 2006) ("There can be but one recovery for one injury, and the fact that . . . there may be more than one theory of liability[ ] does not modify this rule."). The jury, however, could have reasonably determined that Ogbonna and Ekworomadu promised Cruickshank an equal share of equity in the business and then concealed from her the fact that they had withdrawn some of the equity that had been built up by giving themselves employment contracts, salaries, and guaranteed bonuses but not her. The equity disbursed in this way was thus not included in the damages awarded for the breach of the agreement to form a partnership claim, which was calculated as the fair market value of Cruickshank's interest in the partnership as of the date her interest in the partnership was terminated.[5] The fraud finding and

---

[5] The question of timing also merits discussion as the timeline of relevant events is a short one. It is undisputed that by at least April 2020, Cruickshank, Ogbonna, and Ekworomadu had made some agreement to do business together. The undisclosed contracts giving Ogbonna and Ekworomadu salaries and guaranteed bonuses were signed in June 2020, but the actual bonuses apparently were not paid until June 2021. Cruickshank filed her lawsuit in October

12

award therefore met the measure of damages set forth in Question no. 23 and was not an impermissible double-recovery of the award for breach of the agreement to form a partnership.

Appellants further assert that there was no evidence Ogbonna and Ekworomadu intended to induce Cruickshank into any action by failing to disclose the contracts, salaries, and guaranteed bonuses. However, as Cruickshank points out, the jury could have reasonably inferred from the evidence that by concealing the fact of the contracts, salaries, and guaranteed bonuses, Ogbonna and Ekworomadu intended to induce Cruickshank into continuing to work on behalf of the business in a CEO capacity without compensation (such as a salary or guaranteed bonus) but with the expectation that she ultimately would receive an equal share of the business's equity. *See City of Keller*, 168 S.W.3d at 822; *see also Brauss v. Triple M Holding GmbH*, 411 S.W.3d 614, 623 (Tex. App.—Dallas 2013, pet. denied) (holding evidence supported inference defendant misrepresented and concealed information to induce plaintiffs to make an original investment, continue investing, loan additional money, and to forbear collection); *Windsor Vill., Ltd. v. Stewart Title Ins. Co.*, No. 14-09-00721-CV, 2011 WL 11545169, at *4 (Tex. App.—Houston [14th Dist.] Mar. 17, 2011, no pet.) (mem. op.) (holding evidence supported inference that defendants remained silent regarding lien to induce plaintiff to issue title policy).

Next, appellants suggest that Cruickshank's theory of fraud by nondisclosure

2020. The jury was instructed to calculate breach damages based on the fair market value of Cruickshank's interest in the partnership as of the date that interest was terminated, and the trial court stated in its final judgment that Cruickshank's "interest in the partnership was terminated no later than November 16, 2020." Although the bonuses were apparently not paid until after the termination date of Cruickshank's interest, the salaries were paid before that time and the signed contracts obligated the business to pay the bonuses; thus, the jury could have reasonably determined in calculating fraud damages that the value of Cruickshank's partnership interest had been reduced by the concealed contract, salaries, and guaranteed bonuses.

of salaries and bonuses was dealt with in the jury submission on breach of fiduciary duty, wherein it stated that "[a] partner does not violate a duty or obligation merely because the partner's conduct furthers the partner's own interest." But, as described above, Cruickshank's theory did not rest merely on the fact that the alleged conduct furthered Ogbonna's and Ekworomadu's own interests; it rested on the assertion the conduct deprived Cruickshank of her share of the equity in the business.

In their final sentence under this issue, appellants contend that there was no evidence of reliance on any act that caused $525,000 in damages. However, even assuming that appellants are correct that the fraud-by-nondisclosure portion of Question no. 22 required proof of reliance, this argument was inadequately briefed. *See* Tex. R. App. P. 38.1(i). We find no merit in appellants' arguments under their second issue and accordingly overrule that issue.

### *Attorney's Fees*

In their third issue, appellants contend that Cruickshank was not entitled to recover her attorney's fees. Appellants' argument under this issue appears limited to asserting that Cruickshank was not entitled to her attorney's fees because she did not prevail on her claim for breach of the agreement, as discussed under issue one above. *See* Tex. Civ. Prac. & Rem. Code § 38.001(b). Because we overruled appellants' first issue challenging the breach claim, we also overrule appellants' third issue, which is dependent on success on the first issue.

14

Having overruled appellants' three issues, we affirm the trial court's judgment.

/s/     Frances Bourliot
Justice

Panel consists of Chief Justice Christopher and Justices Jewell and Bourliot. (Christopher, C.J., concurring) (Jewell, J., joins both opinions)